## Chris Shanna WALTERS v.
## ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 01-1094

72 S.W.3d 533

Court of Appeals of Arkansas
Division II
Opinion delivered April 17, 2002

[Petition for rehearing denied June 26, 2002]

*Blackmon-Solis & Moak, L.L.P.*, by: *DeeNita D. Moak*, for appellant.

*Dana McClain*, for appellee.

*Gail Laster*, attorney *ad litem.*

OLLY NEAL, Judge. This appeal is from the Pulaski County Circuit Court wherein the trial court terminated the parental rights of appellant as to S.B. and J.W., her two minor children. On appeal, appellant argues (1) the trial court lacked jurisdiction to terminate her parental rights; (2) the trial court erred by violating Arkansas law and her due process rights by failing to hold an adjudication hearing after the November 2000 probable cause hearing; and (3) the trial court erred in finding that there was sufficient evidence to terminate her parental rights. We affirm.

Appellant's first contention is that the trial court lacked jurisdiction to terminate her parental rights because the court failed to hold an adjudication hearing following the November 9, 2000 probable-cause or emergency hearing. We disagree and affirm on this point.

Arkansas Code Annotated section 9-27-306 (Repl. 2002) establishes the extent of a juvenile court's jurisdiction. *Inter alia,* it provides that the juvenile courts of this State shall have original, exclusive jurisdiction for proceedings in which a juvenile is alleged to be delinquent or dependent-neglected, those in which a family is alleged to be in need of services, and proceedings involving the termination of parental rights. Ark. Code Ann. § 9-27-306 (Repl. 2002).

Probable-cause hearings are limited to the purpose of determining whether probable cause existed to take a juvenile from the home and to determine whether probable cause still exists to protect the juvenile. Ark. Code Ann. § 9-27-315(a)(1)(B) (Repl. 2002). At the probable-cause hearing, the court is required to set the time and date for the adjudication hearing, which must be held within an absolute maximum of fifty days of the probable-cause hearing. Ark. Code Ann. § 9-27-315(e) (Repl. 2002). All other issues, with the exception of custody and services, shall be reserved for hearing by the court at the adjudication hearing conducted subsequent to the probable-cause hearing. Ark. Code Ann. § 9-27-315(a)(2)(A) (Repl. 2002).

An adjudication hearing is held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a) (Repl. 2002). "The adjudication hearing shall be held within thirty (30) days of the emergency hearing, but may be continued for no more than twenty (20) days following the first thirty (30) days on motion of any party for good cause." Ark. Code Ann. § 9-27-315 (Repl. 2002). Where the court has approved the return of a child to the mother, our supreme court has held that DHS retains legal custody of the child until the date on which the court enters an order permitting it to close its protective-services case and dismiss the action. *See Moore v. Arkansas Dep't of Human Servs.,* 333 Ark. 288, 969 S.W.2d 186 (1998).

In any case where there is probable cause to believe that immediate emergency custody is necessary to protect the health or physical well-being of a child from immediate danger, the court may issue an *ex parte* order for emergency custody. Ark.

Code Ann. § 9-27-315 (Repl. 2002). Following the issuance of an emergency order, the court must hold a hearing to determine if probable cause to issue the order continues to exist. Ark. Code Ann. § 9-27-315 (Repl. 2002). At the emergency hearing, the court shall schedule an adjudication hearing. Ark. Code Ann. § 9-27-315(d)(1) (Repl. 2002). The use of the word "shall" in a statute means that the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurdity. *Ramirez v. White County Circuit Court*, 343 Ark. 372, 38 S.W.3d 298 (2001).

Appellant went with her children into her probation officer's office on June 4, 1999. The affidavit in support of the Petition for Emergency Custody provided that appellant was very tearful and irrational. "She was crying, yelling, screaming, and reading the Bible. The mom's behavior was erratic. She started going down the hallways making lots of noise and disturbing court already in session." Appellant was asked whether or not she was on drugs, to which she replied that she was not and that they could test her. While being tested, appellant urinated in her panties and then did not put them back on. She tested positive for marijuana and possible PCP and was held in jail due to her behavior.

On June 15, 1999, a probable-cause hearing was held, at which time the trial court determined that probable cause existed to remove the children from the appellant's custody and ordered that the children remain in DHS custody. On August 3, 1999, the court held an adjudication hearing and determined that the children were dependent-neglected. The court ordered that the children remain in DHS custody and ordered family services, including a psychological evaluation and random drug/alcohol screening for appellant.

In February of 2000, the trial court issued an order that allowed appellant to have unsupervised, overnight visitation with her children, and in the May 23, 2000 permanency planning hearing, the trial court returned custody of the children to appellant. In making this decision, the court provided:

> I will order the return of the children. I have no problem doing that, but it would be premature for the Court to terminate its

involvement. It would take a most unusual case for me to close it on the day that we return the children home because the proof of the pudding is what happens after the children get home. I can't imagine a case where I would close it the first day we return the children home because I want to follow up and make sure that everything works. . . . I would not remove the Court's authority at this point. I'm at least scheduling us for one more review to make sure that things have actually gone well with the reunification. . . . I am going to require DHS to maintain a protective-services file. I want at least one home visit every two weeks until we can come back to court and make sure that things are going well.

Further, the court, in the order, provided that jurisdiction was continued. The children remained in appellant's custody until October 11, 2000, when DHS filed a Motion for Ex Parte Emergency Change of Custody, following an incident where Ms. Walters walked in front of cars with her youngest son, J.W. The children remained in DHS custody until the termination proceedings.

■ The court noted on several occasions that it would retain jurisdiction over the case. The probable-cause/emergency retaking of custody hearing was simply a hearing held to protect appellant's rights with regard to whether or not the taking of the children into DHS custody was appropriate. Appellant was afforded that hearing on November 9, 2000, at which time the court determined that probable cause existed. During the hearing, the court stated "this is essentially a probable-cause hearing as to DHS' removal." It was unnecessary for the court to hold an adjudication hearing at this juncture because the children were already adjudicated dependent-neglected. Thus, we conclude that jurisdiction was proper.

■ In the alternative, appellant argues that the trial court erred by violating Arkansas law and her due process rights by failing to hold an adjudication hearing after the November 2000 probable-cause hearing. We do not reach the due process argument as it was not raised below. Failure to raise the challenge below is fatal to the appellate court's consideration on appeal. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). Even

constitutional issues will not be considered when raised for the first time on appeal. *Id.*

Appellant's final argument is that the trial court erred in finding that there was sufficient evidence to terminate her parental rights. When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Dinkins v. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Arkansas Code Annotated section 9-27-341 (Supp. 1999) allows a court of competent jurisdiction to terminate the rights of a parent if

> a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents; however, parental rights should not be allowed to continue to the detriment of the child's welfare and best interests. *Id.* Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 1999) requires that "an order terminating parental rights . . . be based upon a finding by clear and convincing evidence." When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the court's findings that the disputed fact was proven by clear and convincing evidence was clearly erroneous. *Dinkins, supra.* "Clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction regarding the allegations sought to be established." *Id.; see Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999).

In making its determination, the court duly noted that DHS failed to show a compelling reason to continue reunification; nor did it ask to terminate its petition. The court found that there were no compelling reasons to continue attempting to reunify the family, as it would be contrary to the children's best interest, health and safety, and welfare to return them to the parental care and custody of their mother and the children had been out of the

home well in excess of one year. The court relied in part on the testimony of Dr. Greg Kazinski who testified that, in his opinion, Walters could not adequately parent her children. We give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Anderson v. Douglas, supra.*

Given our deferential standard of review, we are not left with a definite and firm conviction that a mistake has been made. The evidence reveals that the children have been out of the home over a year. Although Walters has made some progress, she is still not able to adequately care for her children. The trial court's decision to terminate appellant's parental rights was not clearly erroneous.

We affirm.

PITTMAN and CRABTREE, JJ., agree.