Jerome MOORE *v.*
ARKANSAS DEPARTMENT OF HEALTH
& HUMAN SERVICES

CA 05-759                                                                 234 S.W.3d 883

Court of Appeals of Arkansas
Opinion delivered May 3, 2006

*DeeNita D. Moak*, for appellant.

*Gray Allen Turner*, Dept. of Human Servs., Office of Chief Counsel, for appellee.

J OSEPHINE LINKER HART, Judge. Jerome Moore appeals from an order of the Conway County Circuit Court terminating his parental rights. Moore argues that the trial court erred: 1) in terminating his parental rights pursuant to Arkansas Code Annotated section 9-27-341 (Supp. 2005) because termination is only permissible when it is required for a permanent placement that would be compromised with maintaining his parental rights; 2) in finding that there was sufficient evidence to terminate his parental rights; and 3) by repeatedly and flagrantly violating his constitutional rights with regard to notice and an opportunity to be heard. We affirm.

T.D. was born on November 16, 1996. Moore is the child's biological father, and Mary Crabtrey is the child's biological mother. For almost all of T.D.'s life, Moore has been absent, either by choice or because he was incarcerated. T.D. has never resided with Moore.

On February 16, 2004, Crabtrey turned her children over to DHS and went to Living Hope for inpatient-mental-health services. Crabtrey had already had extensive contact with DHS, and she previously had her parental rights terminated as to other children. T.D. was subsequently adjudicated dependent-neglected and entered therapeutic foster care.

On November 3, 2004, DHS petitioned to terminate Moore's parental rights, alleging that he had abandoned T.D. The petition also recited that DHS was seeking termination of the parental rights of Crabtrey and David Morgan, the biological father of Crabtrey's other child, K.M., who is not the subject of this appeal. After the filing of the petition, Moore, who was in prison for sexually molesting a three-year-old girl, was notified for the first time that T.D. was in foster care and that DHS had filed a petition to terminate his parental rights.

At the termination hearing, Crabtrey testified that Moore "run out the day I told him I was pregnant [which was in 1996] and didn't show back up until Ninety-nine or Two Thousand." She admitted that Moore had sent presents through Angel Tree one time in 2000 and sent a single letter that she was aware of. Moore did not dispute that his contact with T.D. was limited to a single two-week period in 2000. He asserted, however, that he had sent several cards and letters, as well as gifts to T.D. through Angel Tree. Moore confirmed that he was currently serving a fifteen-year sentence after being convicted of molesting the daughter of David Morgan, but denied having committed the offense. Moore stated that he was eligible for parole, and in any case, would leave prison in 2011.

In its February 28, 2005, order terminating Moore's parental rights, the trial court recited that it was "contrary to [T.D.]'s best interests, health and safety, and welfare to return him to the parental care and custody" of Moore. It further found that Moore had "willfully failed to maintain meaningful contact with the child and has willfully failed to provide significant material support." The trial court did not, however, terminate Crabtrey's parental rights. Instead it directed DHS to develop a case plan with the goal of reunification.

Moore first argues that the trial court erred in terminating his parental rights pursuant to Arkansas Code Annotated section 9-27-341 because termination is only permissible when it is required for a permanent placement that would be compromised with maintaining his parental rights. He contends that "it is absolutely required that there be an appropriate permanency placement plan for the juveniles before the trial court can consider termination," and that his rights should not have been terminated because "the legislature has mandated that the termination of parental rights statute only be used when it is necessary to clear a juvenile for permanent placement." We find no merit in this argument.

Termination of parental rights cases are reviewed de novo. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). However, while we review the factual basis for terminating parental rights under a clearly erroneous standard, with regard to errors of law, no deference is given to the trial court's decision. *See Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003).

■ The portion of Arkansas Code Annotated section 9-27-341 that Moore urges us to find dispositive states:

> (a)(1)(A) This section shall be a remedy available only to the Department of Health and Human Services or a court-appointed attorney ad litem.
>
> . . .
>
> (2) It shall be used only in cases in which the department is attempting to clear a juvenile for permanent placement.

However, we note that the statute merely requires DHS to be "attempting" to clear a juvenile for permanent placement. *Id.* In the instant case, DHS was attempting to terminate both Moore's and Crabtrey's parental rights, which would have "cleared" T.D. for adoption or, more appropriately, long-term therapeutic foster care.[1] The fact that DHS failed to convince the trial court to terminate Crabtrey's parental rights is of no moment as the statute clearly contemplates termination of only a single parent's parental rights. *See* Ark. Code Ann. § 9-27-341(c)(1)(2)(A)(i).

Regarding Moore's assertion that the trial court proceeded without an appropriate permanency placement plan, we find that this contention is not supported by the record. While it is true that a permanency-planning hearing was not held, a permanency planning report was filed for record and has been made a part of the addendum.

For his second point, Moore argues that the trial court erred in finding that there was sufficient evidence to terminate his parental rights because DHS failed to meet its burden of proof. Without citation of authority, he attacks the finding that he "abandoned" T.D., claiming that "in and of itself" it does not establish a reason for termination because "many parents do not have their children in their physical custody [and] that does not necessitate termination." He notes that he testified that he had

---

[1] We note that T.D. has been seriously abused as a child and suffers from significant mental illness. Among his demonstrated symptoms was his penchant for killing animals. It is documented that he killed "some" kittens by bouncing them on the floor and "some" puppies by placing them in a microwave. Given this history, we question whether the child may be reasonably considered "adoptable."

tried to send cards and gifts to T.D., but largely was frustrated by his inability to find Crabtrey. Further, citing *Minton v. Ark. Dep't of Human Servs.*, 72 Ark. App. 290, 34 S.W.3d 776 (2000), he contends that the trial court's finding that he failed to materially support T.D. cannot be a dispositive finding because DHS never requested that he pay support. We disagree.

In reviewing the trial court's evaluation of the evidence in termination-of-parental-rights proceedings, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Beeson v. Ark. Dep't of Human Servs.*, 37 Ark. App. 12, 823 S.W.2d 912 (1992).

In pertinent part, Arkansas Code Annotated section 9-27-341(b)(3) lists as grounds for termination of parental rights the situation where:

> (ii)(a) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.
>
> (b) To find willful failure to maintain meaningful contact, it must be shown that the parent was not prevented from visiting or having contact with the juvenile by the juvenile's custodian or any other person, taking into consideration the distance of the juvenile's placement from the parent's home.
>
> (c) Material support consists of either financial contributions or food, shelter, clothing, or other necessities when the contribution has been requested by the juvenile's custodian or ordered by a court of competent jurisdiction.
>
> (d) It is not necessary that the twelve-month period referenced in subdivision (b)(3)(B)(ii)(a) of this section immediately precede the filing of the petition for termination of parental rights or that it be for twelve (12) consecutive months;

. . .

(iv) A parent has abandoned the juvenile;

We hold that the trial court did not err in finding that Moore failed to maintain meaningful contact with T.D. By Moore's own testimony, it was established that his contact with his son was limited to a single two-week period. Furthermore, while it is true that Moore was incarcerated for a portion of this time, there was other evidence that Moore chose not to be a part of T.D.'s life. As noted above, Crabtrey testified that Moore absented himself from the child's life as soon as he found out that Crabtrey was pregnant, and he did not return until some three or four years later. Accordingly, giving the deference that we must to the trial court's superior position to make credibility determinations, we cannot conclude that the trial court's finding that Moore had failed to maintain meaningful contact with T.D. was clearly erroneous. Because only a single ground is required for termination under the statute, we need not address the second reason for termination, Moore's alleged failure to support T.D.

Finally, Moore argues that the trial court erred by repeatedly and flagrantly violating his constitutional rights with regard to notice and an opportunity to be heard. He concedes that this argument was not raised to the trial court, but nonetheless urges us to consider it. We must decline. It is settled law that we do not reach constitutional arguments in termination cases if the argument is not raised to the trial court. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992); *Walters v. Arkansas Dep't of Human Servs.*, 77 Ark. App. 191, 72 S.W.3d 533 (2002).

Affirmed.

VAUGHT and ROAF, JJ., agree.