Jerri Michelle CLEMMERSON  *v.*  ARKANSAS DEPARTMENT
of HUMAN SERVICES

CA 06-152                                        279 S.W.3d 484

Court of Appeals of Arkansas
Opinion delivered March 12, 2008

*Holloway Underwood, PLLC,* by: *Shannon Holloway Underwood,* for appellant.

*Snellgrove, Langley, Culpepper, Williams & Mullally,* by: *Lacey N. Gramlin,* attorney ad litem.

*Gray Allen Turner,* Office of Chief Counsel, for appellee.

JOSEPHINE LINKER HART, Judge. This appeal is before us for the third time. First, Jerri Michelle Clemmerson's counsel attempted to submit a brief that did not comport with Arkansas Supreme Court and Court of Appeals Rule 4-2, and it was rejected by the clerk of this court. Clemmerson's counsel then filed a motion requesting that we accept the brief with its deficiencies, which we denied. A brief was subsequently submitted in the no-merit format that was promulgated in *Linker-Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), and Ark. Sup. Ct. R. 4-3(j)(1). That brief purported to identify and explain why all the adverse rulings made against Clemmerson would not support a non-frivolous appeal. However, in an unpublished opinion handed down on September 20, 2006, we ordered rebriefing because Clemmerson's attorney failed to identify and discuss all the adverse rulings. We also strongly recommended that Clemmerson's appellate counsel

consider, as the basis for a merit brief, the issue of Clemmerson's mental competence to assist her trial counsel.

Clemmerson's counsel declined to follow our recommendation and again filed a no-merit appeal. In an unpublished opinion handed down on June 13, 2007, we again held that the brief submitted by Clemmerson's counsel failed to comport with the dictates of *Linker-Flores*. Among other deficiencies, we found inadequate the discussion of the denial of a motion for a continuance for the purpose of allowing Clemmerson to undergo a psychological evaluation to ascertain her competence to assist her trial counsel. We ordered this latter point to be briefed in merit format. After substitution of appellate counsel, this issue has now been raised in merit format. On appeal, Clemmerson argues that the trial court erred in terminating her parental rights because denying her request for a psychological evaluation denied her right to due process.[1] We affirm.

On April 7, 2007, ADHS first took Clemmerson's newborn son, A.C., into custody pursuant to an allegation of inadequate supervision due to her marriage to Douglas Clemmerson,[2] a convicted sex offender who was forbidden to be around children. After a probable-cause hearing held a week later, in which Clemmerson testified that, upon learning of his conviction, she removed her husband from the home, A.C. was returned to her custody. However, Clemmerson, who is legally blind, subsequently left A.C. in the care of a friend while she went to Oklahoma to be with her husband. ADHS again took the child into custody. In the probable-cause order, the trial court appointed an attorney ad litem for Clemmerson, "based on information presented at this hearing about the mother's behavior and past history." Subsequently, ADHS secured a dependency-neglect finding.

Clemmerson's case moved on to termination of her parental rights (TPR). At the TPR hearing, Clemmerson's court-appointed attorney ad litem and trial counsel moved for a continuance for the purpose of providing her with a psychological

---

[1] We attempted to certify this case to the supreme court, however certification was denied.

[2] Although Douglas Clemmerson was, at the time, A.C.'s legal father, Ronnie Godwin entered the case as A.C.'s putative father. Godwin was dismissed from the termination-of-parental-rights case and is not involved in this appeal.

evaluation. Her guardian ad litem noted that he had made a similar request twice before. Without taking any evidence, the trial judge denied the request, declaring Clemmerson competent. The trial court subsequently terminated her parental rights to A.C.

On appeal, Clemmerson argues that denying her motion for a mental evaluation violated her right to due process. She analyzes the error in terms of it being a deprivation of procedural due process, substantive due process, and her competency to stand trial. We believe that only the latter, her competency to stand trial, was sufficiently preserved below.[3]

As Clemmerson notes, our supreme court has extended to proceedings involving the termination of parental rights many of the same Fourteenth Amendment due-process safeguards as have been found to be constitutionally mandated in criminal trials. *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005) (recognizing the right to effective assistance of counsel and adopting the same criminal-law standards for evaluating counsel's performance as promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984)); *Linker-Flores, supra* (holding that trial counsel file a no-merit brief comparable to that required by *Anders v. California*, 386 U.S. 738 (1967), for criminal cases); *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000) (holding that the principles that require payment of attorney's fees for representing an indigent criminal defendant apply to TPR cases as well).

In criminal law, a trial court is required by statute to ensure a defendant's mental competency. Ark. Code Ann. § 5-2-305 (Repl. 2006). Arkansas Code Annotated section 5-2-305(a)(1) states that the trial court shall immediately suspend proceedings if the defendant files notice that he will put his fitness to proceed in issue or if there is otherwise reason to doubt the defendant's fitness to proceed. In *Ball v. State*, 278 Ark. 423, 646 S.W.2d 693 (1983), our supreme court noted that the purpose of the statute was to "prevent the trial of any person while incompetent to understand

---

[3] In our previous opinions in this case, we determined that the issue of whether the trial court erred in refusing to order a psychological evaluation to assess Clemmerson's "competence" was not wholly frivolous. These holdings necessarily presuppose that the issue was preserved. Because the preservation issue is law of the case, we need not address the issue further.

the nature of the procedures involved and to assist in the defense thereof." The United States Supreme Court held that this basic tenet of due process is firmly rooted in our common law, tracing its origins back to Blackstone's *Commentaries*. *Drope v. Missouri*, 420 U.S. 162 (1975). Accordingly, given our supreme court's steadfast defense of a parent's right in TPR cases to the same due-process protections afforded criminal defendants, logic demands that we accept the establishment of Clemmerson's competence as a fundamental aspect of due process.

█ We are mindful from our review of the record that Clemmerson's trial counsel never uttered the phrase "due process." Nonetheless, Clemmerson's "competence" has been an issue throughout this case. Indeed, as noted previously, the trial court found Clemmerson's behavior to be so extreme as to warrant the highly unusual step of appointing for her an attorney ad litem as well as trial counsel. Accordingly, given that establishing the competence of a criminal defendant is so firmly rooted in his or her right to due process, we believe that it would be exalting form over substance to not find that this aspect of Clemmerson's due process argument is preserved.

██ Nonetheless, we must affirm the trial court's decision. While we believe that due process requires that a defendant in a TPR hearing must be "competent," as a criminal defendant must be, our legislature has not specified the procedure that must be followed in protecting this right. While we noted previously that Arkansas Code Annotated section 5-2-305 applies to criminal trials, there is no equivalent statutory provision relating to TPR proceedings. Accordingly, we conclude that the statutory requirement that the trial judge immediately stop the proceeding and seek a competency determination is only procedure, and not a substantive right. While we believe that a defendant in a TPR hearing has the same due-process rights as a criminal defendant, the TPR defendant must bear the responsibility to ensure that the issue of his or her competency is timely raised to the trial court. Given that regular review hearings are scheduled in dependency/neglect cases, we do not think that this obligation is too onerous. In the instant case, as Clemmerson's attorney ad litem argued to the trial court, Clemmerson's "competence" was at issue from the very beginning. Yet, her attorney ad litem did not attempt to have her

evaluated by a mental health professional.[4] Moreover, her attorney ad litem failed to object when the trial judge made her competency finding without taking evidence. Accordingly, we must affirm.

Affirmed.

MILLER, J., agrees.

HEFFLEY, J., concurs.

SARAH J. HEFFLEY, Judge, concurring. I agree that the trial court's order terminating appellant's parental rights should be affirmed. However, I would affirm on the basis that appellant failed to present her due process argument to the trial court below.

The possibility of a psychological evaluation for appellant was brought before the court three different times below. The first was at the adjudication hearing, held June 9, 2005. At that hearing, appellant testified that she did not have a current mental health diagnosis or any disability other than being legally blind. She also repeatedly told the court that she did not want to participate in reunification services, and she wanted Godwin to have permanent custody of A.C. Appellant's counsel also reiterated that appellant did not want a psychological evaluation or any other services. Appellant's guardian ad litem, however, objected and argued that it was not in appellant's best interest to not have reunification services, and that appellant needed a psychological evaluation to see if she had a mental disorder before her need for reunification services was determined. The ad litem failed to obtain a ruling on the issue.

The order for no reunification services, filed June 9, 2005, contained findings that: (1) appellant had no disability that would prevent her from performing a major life activity and that she was legally blind, and (2) appellant did not want any reunification services. On August 22, 2005, appellant's counsel and ad litem filed a joint motion to set aside the order for no reunification services and for a psychological evaluation of appellant, which is the second time the issue came before the trial court. The motion argued:

> [Appellant's] behavior and mental state may indicate a mental disorder or condition that one may conclude she is not of sound

---

[4] We note that Clemmerson's counsel did not assert that she was unable to pay for a mental evaluation. Also, there is no indication that she was incarcerated or otherwise not at liberty to secure an evaluation.

> mind. . . . this mental disorder may provide her with a valid defense to the action as well as qualify her as a member of the protected class specified in the Americans with Disabilities Act. . . . [Appellant] has expressed an inability to understand the proceedings against her and now joins in this request for said psychological assessment and for other reunification services.

The court denied this motion on September 7, 2005, and stated that: (1) the court was convinced that appellant knew exactly what she was doing when she left the state and declined all reunification services; (2) appellant's remedy was to file a timely notice of appeal from the order for no reunification services, not to file a motion to set aside the order; (3) appellant had ample opportunity to participate in this case but chose not to do so.

The third time the issue came before the trial court was at the termination hearing, when appellant's counsel moved for a continuance for the purpose of obtaining a psychological evaluation on appellant. Again, counsel argued that appellant may have a mental disorder or condition that would include her under the Americans with Disabilities Act and that she was unaware of the ramifications of her refusal of reunification services. Appellant's ad litem joined in the request. The court denied the motion for continuance, again stating that the court was convinced:

> beyond a reasonable doubt that Mom knew exactly what she was doing when she made the statements to the court about choosing her husband over her child; she knew exactly what she was doing when she repeatedly said she did not want services; she knew exactly what she was doing when she repeatedly said she wanted Mr. Godwin to have custody. . . . She is not disabled to the point where she would qualify for any particular services that she has not already been offered. She chose to and the Court found it was in this child's best interest for her not to have reunification services and she knew it. The Court denies, for the third time, the motion for any psychological and a new one now, psychiatric, evaluation.

As is clear from the above recitation of the proceedings below, at no time did appellant argue that her due process rights were violated as a result of not receiving a court-ordered psychological evaluation. It is settled law that we do not reach constitutional arguments in termination cases if the argument is not raised to the trial court. *Moore v. Ark. Dep't of Human Servs.*, 95 Ark. App.

138, 234 S.W.3d 883 (2006). Accordingly, I believe we are precluded from reaching the merits of appellant's argument, and the trial court's order terminating appellant's parental rights should be affirmed.