2009 Ark. App. 704

**Brandi FLOWERS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 09–667.**

Court of Appeals of Arkansas.

Oct. 28, 2009.

Deborah R. Sallings, Little Rock, for appellant.

Tabitha R. McNulty, Office of Chief Counsel, for appellee.

ROBERT J. GLADWIN, Judge.

This is a termination-of-parental-rights appeal brought by Brandi Flowers, with whom DHS has been involved since November 2004. On March 20, 2009, the Pulaski County Circuit Court terminated her parental rights to M.C., born December 6, 2006. Appellant's attorney has filed a motion to withdraw pursuant to *Linker–Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), asserting that there are no issues of arguable merit to support the appeal. Under Rule 6–9(i)(1) of the Arkansas Rules of the Supreme Court and Court of Appeals, counsel's motion is accompanied by an abstract, addendum, and brief stating that no adverse ruling was made at the termination hearing [1] and explaining why there is no meritorious ground for reversal, including a discussion of the sufficiency of the evidence to support the termination order. The clerk of this court sent a copy of counsel's motion and brief to appellant,

---

1. The only adverse ruling was the circuit court's refusal to give appellant a final visit with the child, which did not affect its decision to terminate parental rights.

informing her that she had the right to file pro se points for reversal. *See* Ark. Sup. Ct. R. 6–9(i)(3). Appellant filed *pro se* points for reversal on August 18, 2009. We agree with counsel that appellant's appeal lacks merit.

In *Flowers v. Arkansas Department of Human Services*, CA08–1148, 2009 WL 263358 (Feb. 4, 2009) (unpublished), we affirmed the termination of appellant's parental rights to another child, E.B., born December 2, 2002. M.C. was born during the course of E.B.'s proceeding. DHS filed a petition for emergency custody of M.C. on November 13, 2007, after appellant appeared in court for a review hearing in E.B.'s case. In the affidavit supporting its petition, DHS enumerated the many ways in which appellant had failed to follow the case plan in E.B.'s proceeding. It discussed the agency's difficulty in locating M.C. and reiterated appellant's lack of progress; failed drug tests; evasion of unannounced home visits; damage to her landlord's premises; detrimental association with Randall Colon (a convicted felon, who was finally ruled out as M.C.'s father in 2008); and lack of credibility in court. The court entered a probable-cause order directing appellant to cooperate with DHS and giving her supervised visitation.

The court held the adjudication hearing on January 8, 2008. In the resulting order, the court found M.C. to be dependent-neglected and took judicial notice of E.B.'s case, in which the court had found appellant to be an unfit parent. The court set the goal of reunification and ordered appellant to obtain and maintain stable housing and income; to submit to random drug screens; to stay in touch with DHS; to make herself available for home visits and court-ordered services; to participate in individual counseling at DHS's expense; to notify DHS and her attorney of any change of residence; and to attend parenting classes. The court found that DHS had made reasonable efforts to provide services and ordered it to conduct a home evaluation of appellant's residence.

The court held a permanency-planning hearing on May 13, 2008. In the resulting order, it continued the goal of reunification and stated that it would give appellant the full twelve months. Finding that DHS had made reasonable efforts to achieve reunification, the court ordered appellant to be drug-free; to submit to random drug screens at least monthly; and to maintain stable housing and income. It relieved her of the requirement of attending individual counseling because she had testified that it had been of no benefit to her.

The court held another permanency-planning hearing on October 14, 2008. It changed the goal to adoption, finding that it was in M.C.'s best interest that appellant's parental rights be terminated. Nevertheless, the court directed DHS to continue to provide services to appellant until the termination hearing. It noted that, since the last hearing, appellant had tested positive for drugs on two occasions; had refused to submit to several other drug screens; and that the court had involuntarily terminated her parental rights to E.B. The court also stated that it was concerned about the lack of utilities in appellant's home, given the long period of time that DHS had provided services to her; that she had a credibility problem; that she had not maintained stable employment; and that she had an outstanding warrant on which she might be arrested.

DHS filed a petition for termination of appellant's parental rights to M.C. At the hearing held on February 20, 2009, the court admitted into evidence several orders from E.B.'s proceeding; appellant's January 2006 psychological evaluation by Dr. Paul Deyoub; and appellant's drug-screen results. Dr. Deyoub, Ms. Meredith

(the caseworker since February 1, 2008), Brenda Keith (an adoption specialist), and appellant testified. Dr. Deyoub said that, after evaluating appellant in January 2006, he diagnosed her with an antisocial personality disorder, which placed her at high risk of being irresponsible and unstable; putting her own needs ahead of her child's; and making impulsive decisions. He stated that her highest test score was on the hypomania scale, which indicated the likelihood of her engaging in acting-out behavior, seeking excitement, having antisocial boyfriends, abusing drugs, and relapsing. He noted appellant's narcissistic traits and said that individuals with antisocial personality disorder live in an unstable, narcissistic, impulsive, and hedonistic manner that can cause major problems in parenting, work, and marriage. Dr. Deyoub stated that appellant's IQ was 78 and that she needed a lot of direction and supervision. He noted that her prior admission that individual counseling, which he had strongly recommended, had been of no benefit, was consistent with an antisocial personality. He stated that appellant's failure to remedy the problems that led to termination of her parental rights to E.B. indicated that his diagnosis was still valid; in fact, he said, her failure to reunite with E.B. made it even less likely that she would be successful with M.C. Dr. Deyoub described the potential danger that appellant's personality disorder posed to M.C.:

> The potential harmful consequence to a child if they are raised by a caretaker who consistently or continuously engages in antisocial behavior is going to be lack of care. The danger of lack of physical care is a concern, and neglect, exposure to antisocial boyfriends, associates and friends. Antisocials associate with other character disorders. The more subtle problems are not spending enough time with the child, lack of nurturing, lack of interest in their school.

Ms. Meredith recommended that appellant's parental rights to M.C. be terminated because the court had terminated her rights to E.B. She testified at length about appellant's failure to keep DHS informed of her current address and place of employment, which made it difficult to visit her home. In November 2008, she said, appellant moved without telling DHS, and the apartment was vacant when she arrived for a visit. She said that the information appellant provided about her employment was so inconsistent that she was still not sure where appellant worked. Ms. Meredith testified that appellant had negative drug screens on November 12 and December 3, 2008; that appellant's February 18, 2009 sample was cold to the touch; and that, on January 28, 2009, appellant said that she could not urinate, which DHS treated as a refusal. Ms. Meredith said that on January 12 and 22, 2009, she made two unsuccessful attempts to perform unannounced visits of appellant's latest residence. She was concerned about appellant's continued association, and apparent cohabitation, with Randall Colon, who was recently released from prison; his mother had informed Ms. Meredith that they were living together. Ms. Meredith recounted appellant's lies about the true ownership of the car she was driving (with a suspended driver's license). She said that appellant did not show up for the scheduled visit with M.C. on November 5, 2008, although Mr. Colon appeared and told her that appellant was unable to attend that day; later, appellant called her and said that she had mixed up the dates. Ms. Meredith added that, on two occasions, appellant had become hostile at the DHS office and had cursed in front of other clients and children.

Brenda Keith testified that M.C. is adoptable, based on her age, good health, and lack of major delays. She said that

she had matched M.C. with 243 families that were available to be considered for adoption of children with her specific characteristics. She confirmed Ms. Meredith's testimony about appellant's untrue statements concerning the ownership of the vehicle she drove.

Appellant characterized all of her drug screens as negative; denied living with Mr. Colon but said that she loved him and was in a relationship with him; disputed Ms. Meredith's testimony about her failure to apprise DHS of her current address and employment; admitted that she did not have a driver's license; denied lying to Ms. Meredith about the ownership of the automobile she drove; and admitted that she had outstanding court fines.

From the bench, the trial court recounted appellant's lengthy history with DHS and her many instances of noncompliance with the court orders and case plan. The court found that appellant had "flat-out lied to the agency" and at trial, saying, "She's a chronic liar. That's always been the case." The court entered an order finding that DHS had an appropriate placement plan for M.C. (adoption); that M.C. was adoptable; and that termination was in M.C.'s best interest. The court terminated appellant's parental rights on two grounds: appellant's failure to correct the conditions that caused the removal while M.C. was out of her custody for twelve months, and the court's involuntary termination of her parental rights to E.B. Appellant filed a timely notice of appeal.

■ Pursuant to Arkansas Code Annotated section 9–27–341(b)(3)(A) (Supp. 2009), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parent. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008). In addition, the proof must establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B).

■ Through the testimony of Ms. Keith, DHS presented evidence that M.C. is likely to be adopted, and Dr. Deyoub's testimony overwhelmingly established that returning the child to appellant held potential harm. The trial court partially based its decision on the termination of appellant's parental rights to M.C.'s sibling, E.B. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(ix)(a)(4). Because we affirmed that decision, this ground was conclusively established. The trial court also found that the child had been adjudicated by the court to be dependent-neglected and had continued out of appellant's custody for twelve months and, despite a meaningful effort by the department to rehabilitate appellant and correct the conditions that had caused removal, those conditions had not been remedied. *See* Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a*). DHS also established this ground.

In spite of more than four years of services from DHS, appellant made no more progress in this proceeding than she did in E.B.'s case, and did not correct the problems that had caused her to lose her parental rights to E.B. At the time of trial, appellant was marginally employed, and her caseworker was not even sure where she worked. Throughout this proceeding, appellant consistently failed to notify her caseworker of her changes of address; continued to abuse drugs; and lied to DHS and to the court. Dr. Deyoub found no reason to believe that she had improved

since he had diagnosed her with antisocial personality disorder in 2006. Additionally, appellant continued her relationship with Mr. Colon, a convicted felon, even though she knew that it was a factor in losing her parental rights to E.B.

Appellant's pro se points consist of complaints about the bias of the caseworker, which allegedly prevented her from getting a fair trial. She did not, however, raise this issue below. We do not reach arguments in termination cases that were not raised to the trial court. *Moore v. Ark. Dep't of Human Servs.*, 95 Ark.App. 138, 234 S.W.3d 883 (2006).

After careful examination of the record, we find that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit termination cases, and we hold that appellant's appeal is wholly without merit. We further hold that the circuit court's decision to terminate appellant's parental rights was not clearly erroneous. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating Flowers's parental rights.

Affirmed.

VAUGHT, C.J., and MARSHALL, J., agree.