Arthur McFARLAND, Sr. *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 05-48                              210 S.W.3d 143

Court of Appeals of Arkansas
Opinion delivered June 15, 2005

*Leah Chavis*, for appellant.

*Michael McCauley*, attorney *ad litem*.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

KAREN R. BAKER, Judge. Appellant, Arthur McFarland, Sr., appeals from the termination of his parental rights by the Carroll County Circuit Court. On appeal, appellant asserts that the trial court erred in finding that the Department of Human Services ("the Department") proved by clear and convincing evidence the likelihood that R.M. or his sibling would be adopted if the termination of parental rights was granted. We affirm.

On January 23, 2003, the Arkansas Child Abuse Hotline received a report that R.M., a five-month-old child born August 11, 2002, had non-accidental trauma consistent with shaken baby syndrome. The child suffered from bilateral subdural hematomas and bilateral retinal hemorrhages and required emergency surgery at Arkansas Children's Hospital. A seventy-two-hour hold was placed on R.M. and his sibling A.M., born November 24, 1999. As a result of R.M.'s injuries, appellant father was arrested on charges of first-degree battery. The children were placed in DHS custody. At the time of the adjudication hearing, appellant father was in jail, and there was some concern about the mother's ability to protect the children from appellant.[1] There was also testimony that both parents admitted that they used marijuana regularly and used methamphetamine as well. The court ordered that the mother submit to random drug testing and ordered that appellant not be allowed visitation as long as he remained incarcerated. The Department was ordered to provide a status report of R.M.'s condition to appellant while he was in jail and to pay for a psychological and psychiatric evaluation of appellant. With the ultimate goal of the case being reunification with the mother, the court determined that the two children were dependent-neglected and that the children should remain in the Department's custody.

At a review hearing held on July 3, 2003, the trial court amended its previous order and required the Department to provide appellant with counseling services and transportation to any counseling appointments. At the next review hearing held on October 9, 2003, Martin Faitak, a clinical psychologist, testified that he performed psychological evaluations on both Ms. McLemore and appellant. He performed a MMPI, a test designed to evaluate symptoms of psycho-pathology or personality aberrations. Faitak diagnosed appellant with a general personality disorder. However, because personality disorders are more difficult to diagnose, Faitak needed to conduct further testing and evaluation in order to provide a more specific diagnosis. Faitak recommended individual and group therapy for appellant. Ultimately, he concluded that "it would be a real high risk to place [the] kids back with

---

[1] The mother, Janet McLemore, has a total of five children. R.M. and A.M. are the subject of this appeal and are the youngest of the five children. The two oldest children belong to appellant, and, while Ms. McLemore and appellant were still living in California, the two children were removed from appellant and Ms. McLemore's custody and ultimately adopted. Also while living in California, Ms. McLemore lost custody and rights of her middle child to the child's father.

either Janet McLemore or [appellant] without their having substantial treatment. By substantial, I mean years, and consistent, intense with the same therapist, ongoing, weekly and with follow-up."

A petition to terminate parental rights was filed on November 13, 2003. At the termination hearing on June 17, 2004, Dr. Barry Allen, a pediatrician in Rogers, Arkansas, testified that both A.M. and R.M. had previously been in his care. A.M. had a relatively good medical history. However, R.M. suffered from seizures, cerebral palsy, and reflux. Because of the reflux problem, R.M. also had a history of asthma, wheezing, and upper respiratory infection. R.M. was fed through a gastrostomy tube placed in his stomach and had to be fed every three to four hours. As a result of the brain trauma from the Shaken Baby Syndrome, R.M. suffered from cortical blindness.

Yadira Cook, the family service caseworker, testified that at the time of the hearing, the children had been in the Department's care for seventeen months. She testified that when the children were first brought into foster care, A.M. was very fearful of men, and he had trouble adjusting to his foster dad. A.M. had night terrors and qualified for therapy in various areas. However, after seven to ten months of therapy, A.M. had improved dramatically. Ms. Cook stated that, considering all the facts, she thought it would be in the best interest of the children that the parents' rights be terminated.

Michelle Yarber testified that she was a family service worker supervisor with the Department and was familiar with the Department's adoption program. She had worked on cases for the Department in the past that resulted in successful adoptions. She stated that because of the ages of the two children and the fact that they were a sibling group, it was likely that they would be adopted. In her opinion, even though R.M. had medical needs, there were adoptive parents that were qualified to meet those needs.

Ms. McLemore testified that she and appellant had been together for twelve years. She testified that appellant was a "controlling and abusive man." He was abusive to her, and as a result, she was afraid of him. Nonetheless, she remained with him because she "was dependent on him." Appellant was in charge of tending to the children during Ms. McLemore's working hours. She testified that when she arrived home after work on the day of the incident, appellant said to her, "the damn baby won't let me sleep." A day or so later, she stated that R.M.'s "eyes started to roll," and he was crying. She claimed that she did not know what

was wrong with him, but she had to go to work, so she did not take him to the doctor. She later told a friend at work about R.M. The friend went to the home to check on the child, and the friend and appellant took the child to the doctor. The child was airlifted to a Rogers hospital and then airlifted to Arkansas Children's Hospital. The child underwent emergency surgery and was diagnosed as having shaken baby syndrome.

At the conclusion of the testimony, the trial court terminated the rights of both parents. This appeal followed.

When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *J. T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* The facts warranting termination of parental rights must be proven by clear and convincing evidence. *Id.* In reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000). Clear and convincing evidence is that degree of proof which will produce in the factfinder a firm conviction regarding the allegation sought to be established. *Id.* In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Beeson v. Ark. Dep't of Human Servs.*, 37 Ark. App. 12, 823 S.W.2d 912 (1992). Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Baker, supra.*

■ Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2003) states that an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). In this case, the trial court relied upon the following grounds:

(vi)(a) The court has found the juvenile victim dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents.

(b) Such findings by the juvenile division of circuit court shall constitute grounds for immediate termination of the parental rights of one (1) or both of the parents;

Appellant's only argument on appeal is that the trial court erred in finding that the Department proved by clear and convincing evidence the likelihood that R.M. or his sibling would be adopted if the termination of parental rights was granted. Appellant further argues that the consideration by the court of the likelihood of adoption "should be construed to require an assessment of the probability that potential adoptive parents will select a particular child, such as [R.M.], who has severe disabilities." Pursuant to the statute, termination of parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the child, including consideration of such factors as the likelihood of adoption of the child. *See* Ark. Code Ann. 9-27-341(b)(3). Appellant conceded in his brief that adoptability of the children is but one factor to consider in the overall termination of one's parental rights. There is no requirement that every factor considered be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that the termination is in the best interest of the child. It would indeed be ironic if, having perpetrated the abuse which resulted in R.M.'s disabilities, appellant could then in turn use those disabilities as the sole basis to prevent the termination of his parental rights.

In its order, the trial court specifically stated that "the children are adoptable, notwithstanding [R.M.'s] disabilities." Thus, the trial court considered in its termination of parental rights the adoptability of the two children, including R.M. and his medical needs. Pursuant to our standard of review, we reverse only if the trial court's finding is clearly erroneous. After a thorough review of the record, we cannot say that the trial court's findings in this case are clearly erroneous. Accordingly, the trial court's order terminating appellant's parental rights is affirmed.

Affirmed.

PITTMAN, C.J., and CRABTREE, J., agree.