Dixie GRIFFIN *v.*
ARKANSAS DEPARTMENT of HEALTH
and HUMAN SERVICES

CA 05-967                                          236 S.W.3d 569

Court of Appeals of Arkansas
Opinion delivered May 31, 2006

*DeeNita D. Moak*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, Dep't of Health and Human Servs., for appellee.

LARRY D. VAUGHT, Judge. Appellant Dixie Griffin appeals from the decision of the Pulaski County Circuit Court terminating her parental rights to her three daughters. She argues on appeal that termination was improper because the children were not being cleared for permanent placement as required by Ark. Code Ann. § 9-27-341(a)(2) (Supp. 2005). We affirm.

Because appellant does not argue on appeal that there was insufficient evidence to support the termination, only a brief review of the facts is necessary. Appellant's three daughters, D.H., age sixteen, M.S., age twelve, and A.G., age six, were first brought into the custody of the Arkansas Department of Health and Human Services (DHHS) in January 2004[1] after appellant was arrested for aggravated robbery and DHHS received reports that her home was a "known prostitution and drug house." At that time, D.H.'s father was deceased, M.S.'s father's whereabouts were unknown, and A.G.'s father, Otis Griffin, was incarcerated following his fourth conviction for DWI. Over the course of this case, appellant was repeatedly incarcerated on charges of aggravated robbery, theft of property, and forgery.

Testimony at the adjudication hearing revealed that appellant was a chronic drug abuser, that appellant frequently allowed prostitutes and drug dealers into her home, that appellant did not provide for or care for her children on a regular basis, and that

---

[1] About three months prior to taking the children into custody, DHHS had opened a protective services case on the family after receiving reports of inadequate supervision.

appellant often verbally abused the girls. Testimony also revealed that Otis Griffin was an alcoholic and drug abuser who often beat appellant while the girls were present.

Otis Griffin testified that, although he was only the legal father to A.G., he had been like a father to the three girls for twelve years. He asked the court to consider him for the girls' placement. He admitted that he had been recently released from prison after serving eleven months, that he was a convicted sex offender,[2] and that he had a history of domestic battery convictions.

Following the termination hearing, the court found that appellant was an unfit parent who had not remedied the conditions that warranted removal of her children in January 2004. The court found that the children were adoptable and that DHHS had proven by clear and convincing evidence that it was in the children's best interest for appellant's rights to be terminated. Because her mother's rights had been terminated and her father was deceased, the court granted permanent custody of D.H. to Wanda Hailey, a family friend who had been caring for D.H. during the proceedings. The goal for M.S. was adoption.[3] With regard to A.G., the court did not terminate the rights of Otis Griffin. Rather, the court agreed to give Otis more time to work with DHHS toward reunification. The court specifically noted that there was confusion in the record over what services Otis had been and had not been offered. Therefore, the court wanted to extend Otis's time to comply to ensure his rights were protected. Hence, the goal for A.G. was either permanent placement with Otis or adoption if Otis's rights were thereafter terminated.

We review cases involving the termination of parental rights de novo. *Moore v. Ark. Dep't of Human Servs.*, 95 Ark. App. 138, 234 S.W.3d 883 (2006). However, although we review the factual basis for terminating parental rights under a clearly erroneous standard, no deference is given to the trial court's decision with regard to errors of law. *See Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003). Pursuant to Ark. Code Ann. § 9-27-341, termination is only appropriate in cases where "the department is attempting to clear a juvenile for permanent placement." Arkansas

---

[2] Although it is not clear from the record, it appears that his conviction was based upon his having sex with a child (either thirteen or fifteen) when he was twenty-five.

[3] Along with the termination of appellant's rights, the court also terminated the rights of M.S.'s father, Christopher Sanders.

Code Annotated section 9-27-338(c) (Supp. 2005) sets forth the following permanency goals (listed in order of preference) to be considered by the circuit court: (1) return the child to the parent if it is in the child's best interest; (2) authorize a plan for termination of parental rights; (3) authorize a plan for guardianship; (4) authorize a plan for permanent custody; (5) continue the goal of reunification as long as the parent has complied with the case plan and reunification can take place within a reasonable amount of time; (6) authorize a plan for another permanent living arrangement.

Griffin first argues that the trial court erred in terminating her rights to her oldest daughter because the trial court placed D.H. in the permanent custody of Wanda Hailey. Griffin argues that there was no need to terminate her rights to D.H. because D.H. was not adopted by Hailey. Her argument requires us to infer that "permanent placement" as referenced in § 9-27-341(a)(2) only refers to adoption, not permanent custodial arrangements.

■ We decline to so hold. Section 9-27-338(c) clearly anticipates that one of the "goals" can be a plan for permanent custody. Additionally, in our recent case *Moore, supra,* we affirmed a termination where we had reservations that the child was not adoptable — because of severe mental illness and abuse the child had suffered — and would instead need long-term therapeutic foster care. Consequently, although the goal in *Moore* was adoption, the likely outcome was a permanent custodial arrangement with a foster family. We also note that Ark. Code Ann. § 9-27-341 only requires that DHHS be "attempting to clear" the child for permanent placement to initiate termination proceedings. In the present case, DHHS's goal with regard to D.H. was adoption or permanent custody, and DHHS was only pursuing termination in order to clear a pathway for either resolution. Therefore, we affirm on appellant's first point.

■ Appellant also argues that the court erred in terminating her rights to M.S. and A.G. because the court chose to allow possible reunification with Otis.[4] Appellant argues that because the court did not terminate Otis's rights, it had no authority to

---

[4] In her brief, appellant believes that the court's order allowed for Otis to gain custody of both M.S. and A.G., however, upon reading the oral ruling and the written order, we are satisfied that the court was only referring to Otis earning (possible) custody of A.G., his biological and legal child, not M.S.

terminate her rights. However, this is of no moment because the statute clearly contemplates termination of only a single parent's parental rights. *See* Ark. Code Ann. § 9-27-341(c)(1)(2)(A)(i); *see also Moore, supra.* Therefore, we affirm this case as to M.S. and A.G. on the basis that there is no requirement that both parent's rights be terminated at the same time.

Affirmed.

CRABTREE and BAKER, JJ., agree.