Todd HALL *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 07-911                                    278 S.W.3d 609

Court of Appeals of Arkansas
Opinion delivered March 5, 2008

*Lisa Lundeen-Gaddy*, for appellant.

*Gray Allen Turner*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney *ad litem* for the minor children.

R OBERT J. GLADWIN, Judge. Todd Hall brings this appeal from an order of the Benton County Circuit Court terminating his parental rights to his daughter, R.H., born February 20, 1999, and to his son, M.H., born February 25, 2000. He raises three points for reversal.[1] We affirm the circuit court's termination order.

Appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of R.H. and M.H. on February 13, 2006, alleging that the children were dependent-neglected. An affidavit in support of the petition states that the children were removed because of physical and sexual abuse by Hall. The affidavit also contains statements reflecting that Hall had told a DHS worker to put the children in foster care to prove that M.H. was constantly lying when making allegations of abuse. The circuit court entered an order for emergency custody the same day.

A probable-cause hearing was held on February 21, 2006. The parents stipulated to the existence of probable cause for entry

---

[1] Hall's wife, Virginia Hall, was a party to the proceedings below. Her parental rights were not terminated, and she is not a party to this appeal.

of the emergency order. The children remained in DHS's custody, and Hall was not allowed any contact with R.H.

After a continuance, the adjudication hearing was held on April 18, 2006. The parents stipulated to facts that would meet the statutory definition of "dependent-neglected." The circuit court continued the children in DHS's custody, with the case goal to be reunification with the parents. Hall was permitted supervised visitation with M.H. Hall was ordered to attend counseling or a sexual-offender program, attend parenting classes focusing on appropriate disciplinary techniques, obtain and maintain stable housing and employment, and pay child support of $20 per week.

A review hearing was held on July 17, 2006. In its order, the circuit court noted that Hall did not appear to be taking the matter seriously or trying to change the behavior that caused the removal of the children. Hall was found to have failed to attend counseling or parenting classes or to have paid child support.

A permanency-planning hearing was held on January 2, 2007. The court entered an order finding that Hall had attended counseling but failed to address the allegations of sexual abuse. Hall was also found not to have attended visitation with M.H. on a regular basis or to have paid child support as ordered. The goal of the case plan was changed to the termination of Hall's parental rights with a guardianship to be obtained for the children.

On February 5, 2007, DHS filed its petition seeking to terminate parental rights. As grounds, the petition alleged that the children had been adjudicated dependent-neglected and continued out of the parents' custody for more than twelve months without the conditions being remedied.

The termination hearing was held on April 24, 2007. M.H. testified that, when he was five years old, his father spanked his feet with a spoon, beat him on his legs and ankles, and bit him.

Todd Hall testified that he was convicted of battery in 2000 for leaving bruises and bite marks on R.H. because he was angry and frustrated with the control his in-laws had over his life. He acknowledged that he had bitten both children since that time and admitted to striking his wife in the arm. Hall acknowledged that M.H. got into trouble for blinking his eyes during nap time because he observed M.H. over a video monitor. He said there was also a camera in R.H.'s room. Hall also acknowledged that he viewed pornography on his computer.

Evelyn Weigel, the children's counselor, testified that she had been treating the children since June 2006. She described the children as having anxiety, post-traumatic stress disorder, and adjustment disorder. She said that there had been intermittent improvement with the children until they had contact with the parents. She was reluctant to recommend continued contact with the parents because the children often associated seeing the parents with a belief that they were returning home.

The children's maternal grandmother, Betty Sue Knapp, testified that the children were living with her and that she had noticed a change in their behavior since the permanency-planning hearing. She described M.H. as violent, using foul language, throwing things, and threatening to kill her. She described R.H. as screaming, beating her head against the bedroom wall, and threatening to kill her. She said the children were unmanageable after visits with their father. She recommended that the children not visit with either parent because they often were confused and agitated after the visits. She said that the children were not as violent as they were when they first came to her home. Knapp indicated that she was willing to adopt the children.

Detective Mark Jordan of the Bentonville Police Department testified that he investigated a hotline report that Hall had been touching R.H. inappropriately. He said Hall was arrested on rape charges in February 2006 but that the charges were dismissed a few weeks prior to the termination hearing. He also testified as to pornography found on Hall's computer.

Kathleen Housley, the counselor seeing Hall and his wife, testified that Hall denied sexually abusing his children and that the subject was not addressed. She said that, if it were determined that R.H. had been sexually abused, Hall should have no contact with her until he completed sex-offender treatment. Housley noted that the mother did not believe that R.H. had been sexually abused. She noted that Hall interacted appropriately during visits with M.H. She also testified that she requested a psychological evaluation be conducted. Housley described Hall as dominating the mother.

DHS caseworker Amber Strickland testified that the children had been in DHS custody for fourteen months at the time of trial. She also said that Hall was not consistent in his visits with M.H. She acknowledged that there had been discussions about having a psychological evaluation for Hall, but she did not know

whether a referral had been made. She also expressed her concerns that Virginia Hall would put the children at risk by choosing Hall over the children. According to Strickland, there were no factors to prevent the children from being adopted by their grandmother.

The circuit court ruled from the bench and found clear and convincing evidence that Todd Hall's parental rights should be terminated. The court found it difficult to assess Hall's credibility, noting that he was manipulative and controlling, trying to have all of the information come out favorable to him, and that he was easily distracted. The court did not find clear and convincing evidence to terminate the mother's parental rights. An order memorializing these findings was entered on June 12, 2007.

On June 21, 2007, the court entered an order appointing Betty Sue Knapp as the children's guardian. The order required Todd Hall to pay child support of $50 per week, even though his parental rights had been terminated. Hall filed a notice of appeal on June 25, 2007, designating the termination order as the order being appealed from.

This court reviews termination of parental rights cases de novo. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). The grounds for termination of parental rights must be proven by clear and convincing evidence. *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Kight v. Ark. Dep't of Human Servs.*, 94 Ark. App. 400, 231 S.W.3d 103 (2006). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

Hall first argues that the termination of his parental rights was not necessary to achieve permanency for the children. We disagree.

Arkansas Code Annotated section 9-27-338(c) (Repl. 2007) gives preference, after the return of the children to their parents, to the termination of parental rights, unless the children

are being cared for by a relative and the termination is not in the children's best interest. Hall's argument focuses only on the preference prong, not the best-interest prong. Here, although the children are being cared for by their grandmother, it cannot seriously be argued that the termination of the parental rights of a person who physically or sexually abused his children is not in the children's best interests. Therefore, we cannot say that the circuit court erred in following the statutory preference for the termination of parental rights in this case.

Hall's second point is that several provisions of the circuit court's order were not supported by clear and convincing evidence. There is no requirement that every factor must be established by clear and convincing evidence; rather, after consideration of all the factors, the evidence must be clear and convincing that the termination is in the best interest of the children. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005). The question this court must answer is whether the circuit court clearly erred in finding that there was clear and convincing evidence of facts warranting termination of parental rights. *See Trout v. Ark. Dep't of Human Servs.*, 359 Ark. 283, 197 S.W.3d 486 (2004).

In its written order, the circuit court found two grounds for termination: that the children had been adjudicated dependent-neglected and remained out of the parents' custody for more than twelve months and, despite meaningful efforts from DHS, the conditions had not been remedied by the parent, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Repl. 2007), and that the parent was found by a court of competent jurisdiction to have subjected any juvenile to aggravated circumstances, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3). Most of Hall's argument appears directed to the finding of aggravated circumstances because, according to Hall, the court did not make a finding that he sexually abused R.H.[2] It is unnecessary to address this argument because there is sufficient evidence to support the circuit court's finding that the children had been adjudicated dependent-neglected and remained out of the parent's custody for more than twelve months.

---

[2] We note that a finding that Hall had sexually abused R.H. is not the only element present that supports a finding of aggravated circumstances. *See* Ark. Code Ann. § 9-27-303(b) (Repl. 2007).

Hall does not argue that DHS did not provide any services, only that there were services that DHS could have provided but did not, specifically pointing to a psychological evaluation. The circuit court found that Hall has failed to address the issues of sexual abuse with his counselor. The failure to consistently attend counseling sessions to address the issues resulting in the children's removal is a factor that shows indifference and will support termination of a parent's rights. *See Jefferson v. Ark. Dep't of Human Servs.*, 356 Ark. 647, 158 S.W.3d 129 (2004).

■ In his third point, Hall challenges the circuit court's order requiring him to pay child support for his children. After the circuit court terminated Hall's parental rights, the court granted guardianship of the children to their maternal grandmother, Betty Sue Knapp. The court also ordered Hall to pay child support of $50 per week. That order was entered on June 21, 2007. Hall filed his notice of appeal on June 25, 2007. However, he did not designate the guardianship/support order as one of the orders being appealed. Rule 3(e) of the Arkansas Rules of Appellate Procedure--Civil requires that the notice of appeal designate the judgment or order from which the appeal is taken. Orders not mentioned in a notice of appeal are not properly before the appellate court. *See Conlee v. Conlee*, 366 Ark. 398, 235 S.W.3d 899 (2006); *Ark. Dep't of Human Servs. v. Shipman*, 25 Ark. App. 247, 756 S.W.2d 930 (1988). The guardianship/support order is independent from the termination order and cannot be considered as relating back to the termination order so that an appeal from the termination order brings up intermediate orders involving the merits and affecting the judgment. *See* Ark. R. App. P.--Civil 3(a). Therefore, we cannot address this point.[3]

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.

---

[3] We note that, insofar as any actual parental relationship was concerned, Hall was, after the entry of the termination order and at the time of the guardianship/support order, substantially the same as a stepparent to his children because he remained married to their mother. A stepparent, by reason of this relationship alone, has no duty to support the stepchild. *Kempson v. Goss*, 69 Ark. 451, 64 S.W. 224 (1901). Neither the circuit court nor the parties cite to any statutory authority providing otherwise.