2010 Ark. App. 237

**Jennifer CHURCHWELL, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 09–1223.**

Court of Appeals of Arkansas.

March 10, 2010.

Leah Beth Lanford, Little Rock, for Appellant.

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, Tabitha Baertels McNulty, Little Rock, for Appellee.

RITA W. GRUBER, Judge.

In an order filed on August 25, 2009, the Craighead County Circuit Court terminated Jennifer Churchwell's parental rights to her son, B.B., born December 2, 2007.[1] The trial court found clear and convincing evidence that termination was in B.B.'s best interests, considering the

---

1. The court's order also terminated the parental rights of B.B.'s father, Danny Sparkman. Mr. Sparkman signed a consent to the termination and has not appealed the order.

likelihood that he would be adopted and the potential harm of returning him to his parents' custody. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2008). It also found the following two grounds had been proven: (1) B.B. had been adjudicated dependent-neglected and had continued to be out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate Ms. Churchwell and correct the conditions that caused removal, those conditions had not been remedied; and (2) other factors ⌊₂or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of B.B. to Ms. Churchwell's custody was contrary to his health, safety, or welfare. Ark.Code Ann. § 9–27–341(b)(3)(B)(i), (vii). We affirm.

A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proven by clear and convincing evidence. *Strickland v. Ark. Dep't of Human Servs.*, 103 Ark.App. 193, 197, 287 S.W.3d 633, 637 (2008). The question this court must answer is whether the trial court clearly erred in finding that there was clear and convincing evidence of facts warranting the termination of parental rights. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark.App. 417, 421, 278 S.W.3d 609, 613 (2008). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722.

■ Pursuant to Ark.Code Ann. § 9–27–341(b)(3)(A), an order terminating parental rights must be based on a finding that termination is in the child's best interest, which includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the child to the parents. The harm referred to in the termination statute is "potential" harm; the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 344, 285 S.W.3d 277, 282 (2008). In addition, the proof must ⌊₃establish at least one of several statutory grounds. Ark.Code Ann. § 9–27–341(b)(3)(B). This court gives a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dowdy, supra.*

Ms. Churchwell's first point on appeal—involving the trial court's concern with her abuse of prescription drugs—is twofold: (1) the trial court clearly erred in finding that there was clear and convincing evidence that B.B. would be subject to potential harm if returned to Ms. Churchwell; and (2) the trial court clearly erred in finding that there was clear and convincing evidence that Ms. Churchwell's prescription drug use prevented her from being able to parent her child. The first part of Ms. Churchwell's argument challenges the court's best-interest finding. Arkansas Code Annotated section 9–27–341(b)(3)(A) requires the court to find that terminating parental rights is in the best interest of the child, considering the likelihood that the child will be adopted—which Ms. Churchwell does not challenge—and the potential harm caused by returning the child to the parent's custody—which Ms. Churchwell does challenge. Specifically, she contends that the trial court's reliance on her use of hydrocodone, for which she had a prescription, was clear error where there was no medical testimony that the drug was not a medical necessity or that it interfered with her ability to parent. The

second part of Ms. Churchwell's argument concerns one of the grounds found by the court to support termination: that is, B.B. was out of Ms. Churchwell's custody for twelve months and, despite a meaningful effort by the department to rehabilitate Ms. Churchwell and correct the conditions that caused removal, those conditions were not remedied.

A brief recitation of the facts in this case is helpful to understanding Ms. Churchwell's argument. The trial court entered an order for emergency custody of B.B. on December 11, 2007, after he and Ms. Churchwell tested positive for cocaine, benzodiazepine, and opiates at B.B.'s birth. Ms. Churchwell had a prescription for hydrocodone to manage pain. It is unclear if the medicine was for general back pain or endometriosis, but she testified that her doctor prescribed ninety hydrocodone per month. B.B. was adjudicated dependent-neglected and the goal of the case was established as reunification. Ms. Churchwell was ordered to comply with the court's orders and case plan; obtain and maintain stable housing; obtain and maintain stable employment or sufficient income; remain drug free and submit to random drug screens; and submit to a drug and alcohol assessment and follow all recommendations.

On June 13, 2008, the court returned B.B. to Ms. Churchwell's custody. Ms. Churchwell was living with her parents, the Bullocks. On July 28, 2008, Ms. Churchwell and her teenage daughter went to SAV–A–LOT with B.B., where Ms. Churchwell "blacked out" due to her drug consumption and was too impaired to care for B.B. Multiple drugs were found in her possession, and she was arrested for endangering the welfare of a minor, felony possession of a controlled substance without a prescription, and public intoxication. Her daughter was also charged with public intoxication. Ms. Churchwell pleaded guilty to endangering the welfare of a minor and possession of a controlled substance without a prescription.

In October 2008, the court transferred temporary custody to the Bullocks while a formal home study was conducted. The Bullocks failed the home study and on November 3, 2008, the trial court returned B.B. to foster care. Despite repeated orders by the court for Ms. Churchwell to undergo a drug and alcohol assessment, she missed four scheduled appointments and did not undergo an assessment until November 4, 2008.

Ms. Churchwell submitted to more than a dozen drug screens between January and September 2008 and tested positive for opium with a prescription in all of these screens. In one screen she also tested positive for methamphetamine and in another she tested positive for methadone. Although DHS continued to supply the names of "medical-detox" facilities to Ms. Churchwell, she did not contact any of the facilities and failed to see her drug use as a problem. In response to DHS's suggestions to address her addiction, Ms. Churchwell provided a letter from her doctor dated December 17, 2008, stating that "she needed to continue on Hydrocodone." Finally, Ms. Churchwell failed to maintain any employment. In February 2009, Ms. Churchwell was sentenced to twelve months' imprisonment for forgery.

On April 24, 2009, the court entered a permanency planning order changing the goal from reunification to termination of parental rights and adoption. Following a termination hearing on July 30, 2009, the court entered an order terminating Ms. Churchwell's parental rights to B.B. on August 25, 2009.

Turning to the first part of Ms. Churchwell's argument, that the trial court

clearly erred in finding that there was clear and convincing evidence that B.B. would be subject to potential harm if returned to Ms. Churchwell, we clarify what the court must find. The trial court must find that termination is in B.B.'s best interest, considering certain factors including the potential harm that return of B.B. to Ms. Churchwell's custody could cause. Ark.Code Ann. § 9–27–341(b)(3)(A)(ii). There is no requirement, however, that every factor considered be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark.App. 323, 327, 210 S.W.3d 143, 147 (2005).

In this case, the court was concerned that Ms. Churchwell never accepted responsibility for having a problem with prescription medication or controlled substances and saw no problem with a prescription for ninety hydrocodone per month. The court noted that Ms. Churchwell did not comply with its orders and took eleven months to complete a drug and alcohol assessment. Heather Clark, a DHS caseworker, testified at the hearing that Ms. Churchwell was usually not sober during supervised visitation with B.B. and that "her eyes were usually glazed somewhat, ... like she wasn't cognitively all there. The visits, I guess, were a little bit chaotic." She also testified that the room and B.B. were always a mess when the visit was over. Finally, Ms. Clark stated that Ms. Churchwell discussed her use of hydrocodone with her and did not grasp that it caused any impairment. The court also expressed concern that Ms. Churchwell had demonstrated that she could not remain drug free in an uncontrolled setting. The court also found that Ms. Churchwell did not have suitable housing when she was released from pris-

on. Ms. Churchwell testified that she planned to live with her parents, who failed the home study. The court found that her parents' home was not a suitable placement.

■ We will not reverse the trial court's findings unless they are clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 621, 12 S.W.3d 204, 208 (2000). Moreover, we give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dowdy, supra.* Ms. Churchwell had been unable to maintain steady employment, continued to test positive for prescribed and non-prescribed drugs, failed to see the impairment caused by these drugs as harmful to B.B. and thus refused to attempt "medical detox," and failed to find suitable housing. Taking all of these facts into consideration, we hold that the trial court did not clearly err in finding that (1) termination of Ms. Churchwell's parental rights was in B.B.'s best interest and (2) despite a meaningful effort by the department to rehabilitate Ms. Churchwell and correct the conditions that caused removal those conditions have not been remedied.

■ Ms. Churchwell also challenges the second ground upon which her termination was based. She contends that the subsequent factors relied upon by the trial court in finding that issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of B.B. to Ms. Churchwell's custody is contrary to his health, safety, or welfare, Ark.Code Ann. § 9–27–341(b)(3)(B)(vii), either existed at the time B.B. was initially removed from her custody or were not previously viewed as factors negating her parental fitness. Because only one ground is necessary to terminate parental

rights, and we have upheld the trial court's finding of the first ground, we need not address this argument. *See Albright v. Ark. Dep't of Human Servs.*, 97 Ark.App. 277, 248 S.W.3d 498 (2007).

Affirmed.

VAUGHT, C.J., and KINARD, J., agree.