2010 Ark. App. 660
**James ROSS, Appellant**

v.

**ARKANSAS DEP'T OF HUMAN SERVICES, and Minor Children, Appellees.**

**No. CA 10–605.**

Court of Appeals of Arkansas.

Oct. 6, 2010.

18. *See Fields v. Ark. Dep't of Human Servs.,* 104 Ark. App. 37, 289 S.W.3d 134 (2008).

Deborah Ruth Sallings, Little Rock, for appellant.

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, Tabitha Baertels McNulty, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant James Ross appeals the order of the Clark County Circuit Court terminating his parental rights with respect to his minor children, J.R.(1), S.R., and J.R.(2). He argues that the termination of his parental rights was not authorized by Arkansas Code Annotated section 9–27–341(a)(3) (Supp.2009) and was not in the children's best interest. We affirm.

According to an affidavit filed with the petition for emergency custody, on August 27, 2008, the Arkansas Department of Human Services (DHS) opened a protective-services case on the Ross family after receiving a report that appellant had abused Mrs. Ross's son, D.S., who was not appellant's legal child. On September 24, 2008, after developing a safety plan, DHS took D.S. and the Rosses' two children, J.R.(1) and S.R., into custody after Mrs. Ross failed a drug screen.

At the adjudication hearing held on November 12, 2008, the circuit court found the children to be dependent-neglected and set a concurrent goal of reunification or relative placement with the maternal grandparents, who were caring for the children while they were in DHS custody. The circuit court ordered various services for appellant and his wife, including individual and family therapy, drug and alcohol assessment, random drug screens, parenting classes, and for appellant, anger-management classes.

At some point during the case, Mrs. Ross was sentenced to the Arkansas De-

partment of Correction (DOC); the record does not reveal precisely when this occurred, but the circuit court appointed DOC parent counsel to represent her at the February 9, 2009 review hearing. While Mrs. Ross was in prison, she gave birth to the Rosses' third child, J.R.(2), on April 13, 2009, and DHS took J.R.(2) into custody as well. The circuit court adjudicated J.R.(2) dependent-neglected on May 11, 2009, and likewise set the goal for her as reunification or relative placement.

On October 13, 2009, appellant was committed to the DOC on the revocation of his probation for domestic battery and possession of an instrument of a crime. The revocation was based on violations of the commission of residential burglary and aggravated assault that arose pursuant to an incident on July 11, 2009, as well as his failure to report to his probation officer. He has remained incarcerated since that time.

DHS filed a petition to terminate appellant's parental rights on September 28, 2009, and after a hearing held on December 14, 2009, the court granted the petition in an order filed on March 15, 2010. Appellant filed a timely notice of appeal on April 5, 2010.

An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark.Code Ann. § 9–27–341(b)(3)(A) (Supp.2009). Additionally, DHS must prove at least one statutory ground for termination by clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(B) (Supp.2009). Our statute provides, as a ground for termination, that the child has been adjudicated dependent-neglected and has continued out of the custody of the parent for twelve months and, despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(a) (Supp.2009).

We review cases involving the termination of parental rights de novo. *Griffin v. Ark. Dep't of Health & Human Servs.*, 95 Ark. App. 322, 236 S.W.3d 570 (2006). However, although we review the factual basis for terminating parental rights under a clearly erroneous standard, no deference is given to the circuit court's decision with regard to errors of law. *Id.*

Appellant does not specifically challenge the circuit court's determination that statutory grounds existed under Arkansas Code Annotated section 9–27–341(b)(3)(B) for the termination of his parental rights, arguing instead that the decision was not in the children's best interests. Ark.Code Ann. § 9–27–341(a)(3)(A) (Supp.2009). He challenges whether the relevant statutes permit a circuit court to terminate the rights of one of the children's parents, but not the other, when the parents are still married to one another and the plan is for the children to potentially return to the remaining parent. In the instant case, he claims that there are no compelling reasons to terminate his parental rights and that it is contrary to the children's best interests to do so.

Appellant notes that the public interest behind the termination process is to protect children who have been abused or neglected, removed from their parents' custody and placed in foster care, because their impermanent status works against their welfare and best interests. *Hathcock v. Ark. Dep't of Human Servs.*, 347 Ark. 819, 69 S.W.3d 6 (2002); *see also* Ark.Code Ann. § 9–27–341(a)(2)–(3) (Supp.2009). In this case, appellant argues that his children's fate was not indeterminate, as DHS's plan was to return them to their mother's custody in the near future, or

failing that, to grant permanent custody to their maternal grandparents.

Citing *Caldwell v. Arkansas Department of Human Services,* 2010 Ark. App. 102, 2010 WL 374432, appellant notes that this court addressed a similar situation and found that the termination of parental rights was clearly erroneous because the plan for the child in question was to remain in her mother's custody. Observing that, in considering the child's best interest, the circuit court is to consider, *inter alia,* the likelihood that the children will be adopted if the petition is granted, the court held that because the child was not going to be placed for adoption but would be returned to her mother, termination of the appellant's parental rights would not serve to achieve permanency for the child. *Id.* Under these circumstances, appellant contends that the relevant statutes do not authorize termination of appellant's parental rights, and the trial court erred in granting DHS's petition.

We disagree. Termination of parental rights must be in the child's best interest and be based on at least one of the nine statutory grounds provided under Arkansas Code Annotated section 9–27–341(b)(3). The circuit court found that both elements were met in the instant case. We note that the overall evidence—not proof of each factor—must demonstrate that termination of parental rights is in the child's best interest. *McFarland v. Ark. Dep't of Human Servs.,* 91 Ark. App. 323, 210 S.W.3d 143 (2005). The potential-harm evidence moreover must be viewed in a forward-looking manner and considered in broad terms. *Dowdy v. Ark. Dep't of Human Servs.,* 2009 Ark. App. 180, 314 S.W.3d 722; *Lee v. Ark. Dep't of Human Servs.,* 102 Ark. App. 337, 285 S.W.3d 277 (2008).

The record contains the following evidence related to the potential-harm issue. On August 27, 2008, DHS received a report which stated that appellant had struck D.S. on the face or head. A month later, appellant and Mrs. Ross agreed to a safety plan with DHS. The Rosses promised to submit to random drug screens; however, that same day Mrs. Ross tested positive for cocaine, methamphetamine, and marijuana. As a result, DHS took an immediate seventy-two-hour emergency hold on D.S, J.R.(*l*), and S.R. The circuit court found the children dependent-neglected, and reunification and relative placement were the concurrent case goals. The children were ordered to remain in foster care. Eight months later, J.R.(2) was born, taken into DHS's custody, and also found dependent-neglected.

In July 2009, appellant left Arkansas and went to Arizona. He claimed that he did so because his wife had been raped, but testimony at his October 2009 probation-revocation hearing[1] revealed an alternate reason. In July 2009, appellant and Frances Hargis broke into Danny and Amanda Wilson's home while the Wilson children were present. Appellant held a knife to Danny Wilson's throat, and Frances Hargis attacked Amanda Wilson. Amanda Wilson required hospitalization for the treatment of her injuries. Appellant's probation was revoked, and he was sentenced to six years' imprisonment.

Appellant acknowledged at the termination hearing that DHS had done all that it could, yet he failed to comply with the case plan that was designed to reunite him with his children. He failed to follow the circuit court's recommendation to attend Alcoholics Anonymous/Narcotics Anonymous meetings, based upon his drug-and-

---

1. Appellant previously pled guilty to a charge of felony possession of a firearm and two counts of third-degree domestic battery and was sentenced to probation.

alcohol assessment. Appellant also admitted that he did not comply with the case plan, and that, since he left Arkansas in July 2009, he had not seen the children. Additional testimony revealed that he neither attended the court-ordered individual counseling that was recommended in his psychological evaluation nor contacted DHS three times per week as ordered by the circuit court.

Given these facts, we agree that there are significant concerns about appellant's ability to protect and care for his children and satisfy their physical and intellectual developmental |₇needs. The evidence demonstrates that the termination of appellant's parental rights was in the children's best interest and does not leave a definite and firm conviction that a mistake was made.

■ We disagree with appellant's argument that, because his wife's parental rights were not terminated, the circuit court was precluded from finding that termination of his parental rights was in the children's best interests. Although he cites *Caldwell, supra,* where this court reversed the circuit court's termination of only the father's parental rights, we have previously held that the relevant statutes permit the termination of just one parent's parental rights. *See Hall v. Ark. Dep't of Human Servs.,* 101 Ark. App. 417, 278 S.W.3d 609 (2008); *Griffin, supra.*

In *Caldwell,* this court simply concluded that the circuit court's best-interest finding in that particular case was clearly erroneous. We hold that *Caldwell* is distinguishable from this case in that (1) there was no evidence that the father physically abused or harmed his child; (2) the paternal grandmother was the child's most stable influence, while there is no evidence that any member of appellant's family had such an influence on any of his children; (3)

there was no evidence that the father had hurt anyone after the DHS case began.

In *Hall,* this court terminated the parental rights of a father who had subjected his child to aggravated circumstances. The circuit court in the instant case found that appellant likewise had subjected his children to aggravated circumstances, and appellant does not contest this finding. We acknowledge that this case presents the fairly unique question of terminating the parental rights of only one of the married parents of the children when the goal of the |₈case, at the time of the termination hearing, was to return custody of the children to the other married parent or to the children's custodial grandparents. The record reveals that appellant was separated from the family home by his imprisonment on his probation revocation and likely would be for a significantly longer period of time pending the adjudication of the new charges against him. The record does not reveal Mrs. Ross's future plans regarding her marriage to appellant, however, as she was not present at the termination hearing.

Appellant raises additional potential options, including the unlikely scenario of the circuit court requiring Mrs. Ross to divorce him versus the imposition of a protection plan, which could include precluding any unsupervised contact between the children and appellant. He suggests that, if the termination order were reversed, a juvenile court-and certainly a divorce court should Mrs. Ross choose that option-could require him to support his children while they were in their mother's or grandparents' custody. Appellant submits that under *Hall,* if his rights are terminated, he has no obligation whatsoever to pay any support, or do anything else, for his children. *See Hall,* 101 Ark. App. at 423, 278 S.W.3d at 613. Yet because he and Mrs. Ross remain married, he claims he would

still be in their lives but not in any way responsible for them.[2] Appellant argues that this court's rationale in *Caldwell, supra*, should control because terminating his rights under these circumstances would not serve to achieve permanency for the children.

The relevant statute does not prohibit the termination of only one parent's rights to his or her children, *see* Arkansas Code Annotated section 9–27–341(c)(2)(A)(i); *see also Hall, supra*, and *Griffin, supra*. But it cannot be disputed that, in the vast majority of termination-of-parental-rights appeals before this court, the parents are not married to each other and the goal of the case is to place the children for adoption or at least to permanently place them with someone other than either parent. However, under our standard of review, we hold that sufficient statutory grounds for termination were presented and not disputed by appellant in his appeal. Additionally, we decline to hold that the circuit court was clearly erroneous in its determination that terminating appellant's parental rights was in the best interest of the children. *See Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007).

Affirmed.

GLOVER and ABRAMSON, JJ., agree.

---

**2.** It was noted to the circuit court at the hearing that the termination of appellant's parental rights would not divest the right of the children to inherit from him unless and until a final order of adoption is entered. Ark.Code Ann. § 9–27–341(c)(1) (Supp.2009).