

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-24

| | |
|---|---|
| | **Opinion Delivered** April 27, 2016 |
| BRITTANY ROBERTS<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV-2014-441]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

**BRANDON J. HARRISON, Judge**

Brittany Roberts appeals two orders of the Washington County Circuit Court in this termination-of-parental-rights case. On appeal, Brittany contends that the circuit court erred when it changed the case-plan goal from reunification to adoption in its permanency-planning order because a relative placement was available for her son L.R. She also argues that it was not in L.R.'s best interest to terminate her parental rights. We affirm.

I. *Facts*

On 27 June 2014, the Arkansas Department of Human Services (DHS) took emergency custody of L.R., a one-year-old child, after receiving notice that police officers had found drug paraphernalia in L.R.'s car seat and playpen during a drug raid in March 2014. Brittany submitted to a drug screen and tested positive for amphetamines,

methamphetamine, opiates, and oxycodone.  On June 30, DHS planned to return custody to Brittany and open a protective-services case, but the caseworker was unable to reach her. Brittany appeared the next day at a local DHS office and tested positive for oxycodone and PCP.  DHS exercised another emergency hold on L.R. and filed a dependency-neglect petition in circuit court.

On July 11, the circuit court found that probable cause existed and that custody could not be returned to Brittany because her unresolved substance-abuse problems posed a risk of danger to L.R.  The court ordered Brittany, among other things, to attend counseling, submit to a drug-and-alcohol assessment and drug screens, and to maintain stable employment and housing.  The court ordered DHS to allow Brittany supervised visits with L.R. twice a week and to set up and pay for transportation if needed.  DHS was also ordered to conduct a home study on Brittany's sister, Elizabeth Roberts, "if interested in placement."

The court held an adjudication hearing in August 2014, which Brittany did not attend.  The court issued a bench warrant for Brittany's arrest for failing to appear at the adjudication but later canceled the warrant.  In its adjudication order, the court found that L.R. faced a substantial risk of serious harm from Brittany's neglect and parental unfitness. It ordered Brittany to show cause for failure to maintain contact with DHS, failure to attend counseling, failure to submit to drug screens, failure to submit to a drug-and-alcohol assessment, failure to maintain stable housing and employment, and failure to keep DHS informed of her address and telephone number.

The court held a review hearing in December 2014 that Brittany, her sister Elizabeth Roberts, her maternal great-grandmother Lynn Coe, her maternal great-aunt Dawn Grala,

and her maternal great-great aunt Sue Beaty attended. The circuit court noted that Brittany had missed four visits with L.R. and had been late to most of the rest of the visits. The court also observed that Brittany appeared to be under the influence of illegal drugs and that her testimony "at times made no sense and was rambling." Brittany tested positive for methamphetamine and amphetamines on the day of the review hearing. The court found that Brittany had been in partial compliance with the case plan by maintaining contact with DHS, keeping employment, participating in a psychological evaluation and counseling, and submitting to the drug-and-alcohol assessments. But the court also found that Brittany had been criminally cited for shoplifting since the last hearing and that she had been driving on a suspended license. The circuit court wrote, "Mom [Brittany Roberts] has acted so terrible in the home of Grandmom Coe causing Grandmom Coe to face eviction due to all of the yelling and screaming in the home[.]"

At the permanency-planning hearing held on 21 May 2015, Brittany admitted that she was not able to care for L.R. and asked the court to place her son with Dawn and Paul Grala, her great-aunt and uncle. From the bench, the court ordered that Brittany visit L.R. alone and stated, "I don't want mom bringing other family members to the visit." In its written order, the court ordered DHS to perform a home study on the Gralas, changed the case-plan goal to adoption, and authorized DHS to file a termination petition.

Brittany filed a motion for visitation on 3 June 2015 asking that the court allow the Gralas to visit L.R. No action was taken on the motion, and DHS filed a petition to terminate parental rights on 18 June 2015. The court convened a hearing on 27 August 2015 and received testimony related to DHS's termination petition and Brittany's request

for relative visitation and placement.  The circuit court ruled that DHS proved each of the statutory grounds alleged in its petition and that it was in the best interest of L.R. to terminate Brittany's parental rights.  The court ruled that it was in L.R.'s best interest not to be placed with the Gralas.  An order was entered on 26 October 2015 terminating Brittany's parental rights to L.R.  Brittany has timely appealed the permanency-planning order and the termination order.

## II.  *Permanency Planning*

Brittany argues here that it was not in L.R.'s best interest to change the case goal from reunification to adoption at the permanency-planning hearing, as there was a possibility for relative placement with the Gralas.  Brittany contends that the circuit court disallowing any other family members to visit L.R. and failing to rule on her motion for relative visitation "simply paved the way for the trial court's ultimate decision to terminate [her] rights."

According to Arkansas Code Annotated section 9-27–338 (Repl. 2015), which lists the permanency goals that the circuit court is allowed to consider, termination and adoption are preferred to other placements if the child cannot be returned to the parent's custody. *See also Friend v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 606, at 15, 344 S.W.3d 670, 678 ("[A]ccording to public policy of this state, termination and adoption are preferred to permanent relative placement.").  Subsection (b)(4) authorizes the circuit court to create a plan for adoption and DHS to file a petition for termination of parental rights unless

> (A) The juvenile is being cared for by a relative and the court finds that:
> (i) Either:

(a) The relative has made a long-term commitment to the child and the relative is willing to pursue guardianship or permanent custody; or
(b) The juvenile is being cared for by his or her minor parent who is in foster care; and
(ii) Termination of parental rights is not in the best interest of the juvenile;

(B) The department has documented in the case plan a compelling reason why filing such a petition is not in the best interest of the juvenile and the court approves the compelling reason as documented in the case plan; or

(C)(i) The department has not provided to the family of the juvenile, consistent with the time period in the case plan, such services as the department deemed necessary for the safe return of the juvenile to the juvenile's home if reunification services were required to be made to the family[.]

In this case, Brittany does not dispute that she was unable to care for L.R. at the time of the permanency-planning hearing. So the top preference of returning the juvenile to a fit parent was not available to the circuit court. The second statutory preference is for adoption unless the juvenile is being cared for by a relative and termination of parental rights is not in the best interest of the juvenile. Here, L.R. was not being cared for by a relative at the time of the permanency-planning hearing. Dawn Grala testified that she had never seen L.R. before in his young life because he was already in DHS custody when she and her husband moved from Florida to Arkansas. There had not yet been a home study to see if the Gralas' home was a safe place for L.R. The circuit court did not err in changing the case goal to termination at the permanency-planning hearing. Custody could not be returned to Brittany, and L.R. was not being cared for by a relative. We therefore affirm on this point.

III.  *Termination*

Brittany's next point is that the circuit court erred in terminating her parental rights because termination was not in L.R.'s best interest when there was an appropriate and available relative placement with the Gralas.

We review cases involving the termination of parental rights de novo. *Griffin v. Ark. Dep't of Health & Human Servs.*, 95 Ark. App. 322, 236 S.W.3d 570 (2006). While we review the factual basis for terminating parental rights under a clearly erroneous standard, no deference is given to the circuit court's decision with regard to errors of law. *Id.* An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest and that a statutory ground for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(A). "Best interest" includes consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning custody of the juvenile to the parent. *Donley v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 335, at 2.

Brittany does not challenge the circuit court's findings that DHS proved the grounds for termination or the court's conclusion that L.R. was adoptable. She instead argues that the court's best-interest findings "do not rise to the level of clear-and-convincing proof because the trial court failed to give proper preference to placing L.R. with his family, the Gralas." While Brittany acknowledges that this court has held that preferential consideration of a relative for placement of the child applies only to initial placement and not to placement when termination of parental rights has been requested, she argues that this court's holdings are contrary to the plain language of the applicable statutory provisions—Arkansas Code Annotated sections 9-28-102, 9-28-103(a), 9-28-105, 9-27-315, 9-27-334(a)(20(A), 9-27-

338(c)(3)(A), 9-27-341, and 9-27-355(b)(1).  Our interpretation of the relative-placement preference, in Brittany's view, is in direct conflict with the statutes' underlying purpose to "preserve and strengthen the juvenile's family ties[.]"  Ark. Code Ann. § 9-27-302(2)(A).

We are not persuaded by this argument because the circuit court, in this case, did consider relative placement, even at the termination phase and even though it was not required to do so by statute or our case law.  During the termination hearing, the circuit court heard about the favorable home study that was done on the Gralas and Brittany's testimony that she wanted L.R. to live with them.  The court also received testimony that L.R. was strongly bonded with his foster brother and that the foster parents wanted to adopt him.  DHS put on evidence that Brittany was living with Lynn Coe when the drug bust occurred and that the drugs were found near the baby.  It was also shown that at the time of the termination hearing Lynn Coe was living with the Gralas.  The court received quite a bit of testimony about the fighting and friction between Brittany, her sister Elizabeth, the Gralas, and Coe.  In the end the court concluded that it would not be in L.R.'s best interest for him to be placed with the Gralas because of the instability in the family, safety-and-credibility issues with the relatives, L.R.'s special needs, and because he "is highly bonded to his foster family, who wishes to adopt him."  Because the circuit court did exactly what Brittany argues it should do under the statutory scheme (consider relative placement at termination), we see no reversible error.  The court's conclusion that terminating Brittany's parental rights was in L.R.'s best interest was not clearly erroneous.



IV.  *Conclusion*

We affirm the termination of Brittany's parental rights to L.R.

Affirmed.

VIRDEN and KINARD, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.