2011 Ark. App. 453

**ENTERGY ARKANSAS, INC., Appellant**

v.

**ARKANSAS PUBLIC SERVICE COMMISSION and Arkansas Tech University, Appellees.**

**No. CA 10–878.**

Court of Appeals of Arkansas.

June 22, 2011.

Paul Burrus Benham III, Tucker Raney and Robert Stephen Shafer, Little Rock, for appellant.

Valerie Frances Boyce, Kevin Lemley, Little Rock, Thomas W. Pennington, Russelville, Dustin McDaniel, Atty. Gen., Colin R. Jorgensen, Little Rock, for appellees. '

DAVID M. GLOVER, Judge.

Entergy Arkansas, Inc., brings this appeal from two orders of the Arkansas Public Service Commission (PSC). The PSC; Arkansas Tech University (ATU); and the Arkansas Attorney General, the Arkansas Building Authority, and the University of Arkansas (as *amici curiae*) have filed briefs in response. The controlling issue in this appeal is whether an indemnity clause contained in Facilities Agreements between Entergy and ATU violated article 12, section 12 of the Arkansas Constitution. The PSC ruled that it did violate the constitution. We affirm.

For approximately forty years, ATU has entered into contracts with Entergy called Facilities Agreements, through which Entergy owns and maintains electrical equipment on ATU's side of the electric meter. The Facilities Agreements contain an indemnity clause in which ATU agrees to indemnify Entergy if an agent or employee of ATU should come in contact with the additional facilities and suffer injury or property damage. When ATU was renovating a dormitory in 2009, Entergy insisted that ATU either sign a Facilities Agreement or that it purchase Entergy's behind-the-meter facilities. ATU objected to the indemnity clause but signed the agreement.

On August 14, 2009, ATU filed a complaint with the PSC alleging that the indemnity clause violated article 12, section 12 of the Arkansas Constitution and unlawfully waived ATU's sovereign immunity. It asked the PSC to reform all of the Facilities Agreements by removing the indemnity clause. Entergy responded that the Facilities Agreements were part of the

applicable tariff approved by the PSC for such services and that, under the filed-rate doctrine,[1] it could not provide additional-facilities service to ATU without the agreements. Later in September 2009, when ATU was expanding an academic building, it filed a motion for a temporary injunction with the PSC asking that Entergy be ordered to finish the electrical work at that building as well without a Facilities Agreement. After a hearing, the administrative law judge (ALJ) denied the motion. ATU then signed a new Facilities Agreement containing the indemnity clause under protest.

Subsequently, ATU filed two amended complaints adding other causes of action against Entergy. In addition to arguing that the Facilities Agreements were void and |₃unenforceable because they were prohibited by article 12, section 12 of the Arkansas Constitution, it argued that they violated the statutes that give the Arkansas State Claims Commission exclusive jurisdiction over claims against state agencies; that they violated the statutes that prohibit discrimination between utility customers; that they were prohibited by the Fourteenth Amendment to the United States Constitution and article 2, section 18 of the Arkansas Constitution; that they violated the statutes prohibiting unreasonable practices; and that they unlawfully discriminated between state agencies. Entergy moved for summary judgment. The General Staff of the PSC argued that the indemnity clause was invalid under article 12, section 12 and article 5, section 20 of the Arkansas Constitution and recommended that the PSC direct Entergy to seek a revision of the additional-facilities tariff to accurately reflect state law.

In Order No. 9, filed May 13, 2010, the ALJ declared that the indemnity clause was in irreconcilable conflict with article 12, section 12 of the Arkansas Constitution and that it was not severable; therefore, the agreements were null, void, and unenforceable in their entirety. Recognizing that there was no disagreement that ATU is an agent of the State of Arkansas; that it partakes of sovereign immunity under article 5, section 20 of the Arkansas Constitution; and that Entergy is a corporation within the meaning of article 12, section 12, the ALJ ruled that it was not necessary to resort to rules of construction to ascertain the plain meaning of article 12, section 12 or the indemnity provision. The ALJ stated: "The words used in both the Constitution and the indemnity clause in the Facilities Agreement are clear|₄and unmistakable in meaning and intent. They have settled and established meanings. These two provisions simply are irreconcilable." He also ruled that the filed-rate doctrine must yield to the Arkansas Constitution. The ALJ did not direct Entergy to seek a revision of the additional-facilities tariff. He also did not decide ATU's other arguments because, he stated, his ruling under article 12, section 12 was dispositive of the entire case. He concluded:

> 6. The indemnification provision which is a part of the serial Additional Facilities Agreements involved in this controversy is such an integral and non-severable part of the overall consideration moving from ATU to EAI that these contracts are entire and indivisible so that the invalidity of the indemnification provision renders the entire agreement void and unenforceable.

> . . . .

Because the decision regarding the first and basic issue raised by the Com-

---

1. The filed-rate doctrine forbids a regulated entity from charging rates for its services other than those properly filed with and approved by the regulatory authority. *Centerpoint Energy, Inc. v. Miller County Circuit Court,* 370 Ark. 190, 258 S.W.3d 336 (2007).

plainant [ATU] in this case, that is, the invalidity of the indemnification provision in the serial Additional Facilities Agreements, is dispositive of the entire case, it is unnecessary to analyze and address the other arguments raised by ATU in its two amended and substituted complaints.

I am not unaware of the position in which this ruling leaves the parties; but I do not believe that I have either the jurisdiction or power, and certainly not the expertise, necessary to reform the serial Facilities Agreements hereby being declared void and unenforceable. The rewriting of these contracts, if that is what the parties ultimately decide to do, will involve consideration beyond the scope of my knowledge and beyond the consideration of how to balance the benefits and obligations of the parties and protect the public interest while avoiding constitutional or other legal obstacles. It is gratuitously suggested, however, that the General Staff of the Arkansas Public Service Commission may be of some assistance to the parties in such an endeavor.

Entergy filed a petition for rehearing. On July 29, 2010, the PSC issued Order No. 13, affirming Order No. 9 without modification and staying the effect of Order No. 9 until this ⌊5matter is resolved on appeal or the PSC approves a revised tariff for additional-facilities service. Entergy filed a timely notice of appeal from both orders.

Arkansas Code Annotated section 23–2–423(c)(3), (4), and (5) (Repl.2002) define the standard of review of appeals from the PSC. We determine whether the commission's findings of fact are supported by substantial evidence, whether the commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or constitutions of the State of Arkansas or the United States. *Hempstead County Hunting Club, Inc. v. Arkansas Pub. Serv. Comm'n,* 2009 Ark. App. 511, at 5–6, 324 S.W.3d 697, 701–02, *aff'd as modified,* 2010 Ark. 221, 384 S.W.3d 477.

■ Entergy states that it is only indirectly interested in whether ATU can legally agree to the indemnity clause and that its only interest is in obtaining its consideration for additional-facilities service. Entergy argues that ATU validly entered into the Facilities Agreements and that, if ATU is constitutionally prohibited from agreeing to indemnify Entergy, the Facilities Agreements are void and unenforceable in their entirety on the basis of the contractual principle of severability.[2] According to Entergy, the indemnification clause is not prohibited ⌊6by article 12, section 12 because of the "public welfare" exception contained in that constitutional provision. Article 12, section 12 provides:

> Except as herein otherwise provided, the State shall never assume, or pay the debt or liability of any county, town, city or other corporation whatever; or any part thereof; unless such debt or liability shall have been created to repel invasion, suppress insurrection, or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the State, ever be released, or in any manner discharged, save by payment into the public treasury.

Entergy contends that the "public welfare" exception applies because ATU's campus

---

2. Entergy also asserts that, because ATU did not file a petition for rehearing from Order No. 9, it cannot argue on appeal that Order No. 9 erroneously held that the Facilities Agreements are void and unenforceable in their entirety. We agree. *See Lavaca Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 65 Ark.App. 263, 986 S.W.2d 146 (1999); Ark.Code Ann. § 23–2–423(a)(2), (c)(2) (Repl.2002).

and associated electrical facilities fulfill a public purpose as educational facilities that are essential to the physical and economic welfare of the people of this state.

We review questions of constitutional construction de novo. *Forrester v. Daniels*, 2010 Ark. 397, at 7, 373 S.W.3d 871, 875. When interpreting the constitution on appeal, our task is to read the laws as they are written and interpret them in accordance with established principles of constitutional construction. *Edwards v. Campbell*, 2010 Ark. 398, at 4, 370 S.W.3d 250, 253. We are not bound by the agency's interpretation of a constitutional provision; however, unless there is a showing that it erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*, 370 S.W.3d at 253. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Edwards*, 2010 Ark. 398, at 4, 370 S.W.3d at 253. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.* at 4, 370 S.W.3d 250.

Article 12, section 12 is part of Arkansas's Constitution of 1874, which was adopted after the difficult period of Reconstruction following the Civil War.[3] During Reconstruction, the corrupt legislature spent millions of dollars on fictitious railroads, levees, buildings that were never constructed, special commissions, and phantom projects, and increased the state debt by 400 percent. KAY COLLETT GOSS, THE ARKANSAS STATE CONSTITUTION, at 11–13 (2011). The constitution of 1874 had distrust of government as its theme and severely limited the powers to tax and borrow. *Id.* at 13–14. One of its major goals was to restore some fiscal integrity to state government. *Id.* at 15.

Entergy has cited, and we can find, no case holding that a state university's indemnification of a corporation like Entergy involves the "public welfare and defense."[4] We agree with the PSC that the term "educational purposes," which is not expressly listed in the "public welfare and defense" exception to article 12, section 12, is clearly not within its intended meaning and that the indemnity clause is in irreconcilable conflict with the constitutional provision.

Because we affirm the PSC's decision on this point, we need not decide the other issues that Entergy has raised on appeal. When a decision on one issue is dispositive of the case, the remaining issues become moot, and there is no need for a decision on the remaining issues. *Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997). An issue becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Flow Doc, Inc. v. Horton*, 2009 Ark. 411, 334 S.W.3d 865. As a general rule, we will not review issues that are moot. *Id.* at 6, 334 S.W.3d at 869. To do so would be to render advisory opinions, which we will not do. *Id.*, 334 S.W.3d at 869. Additionally, we will only decide those constitutional issues that are necessary to a decision in the specific case at hand. *Arkansas Dep't of Human Servs. v. Cole*, 2011 Ark. 145, 380 S.W.3d 429. We

---

**3.** Similar language was used in article 10, section 16 of the Arkansas Constitution of 1868.

**4.** The PSC observes that, although several Arkansas statutes include the phrases "educational purposes" and "public welfare," they separate those phrases with the word "or." *See* Ark.Code Ann. §§ 4–25–103 (Repl.2001), 4–27–302 (Repl.2001), 20–77–1505 (Supp. 2009), 23–69–111 (Repl.2001), and 23–75–121 (Repl.2004).

also may not issue advisory opinions in anticipation of future litigation. *Walker v. McCuen,* 318 Ark. 508, 886 S.W.2d 577 (1994). Courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *Flow Doc,* 2009 Ark. 411, at 6, 334 S.W.3d at 870.

Affirmed.

HART, GLADWIN, GRUBER, ABRAMSON, and HOOFMAN, JJ., agree.