SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-691

<table>
<tr><td>TOMMY THOMPSON<br>      APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN<br>      APPELLEES</td><td>**Opinion Delivered** December 17, 2014<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. JV-2014-225]<br><br>HONORABLE JIM D. SPEARS,<br>JUDGE<br><br>REVERSED AND REMANDED</td></tr>
</table>

## PHILLIP T. WHITEAKER, Judge

Tommy Thompson appeals a Sebastian County Circuit Court order adjudicating his ten-month-old twin daughters dependent-neglected. He raises three points for reversal in which he challenges (1) the constitutionality of the removal statutes; (2) the sufficiency of the evidence to support the dependency-neglect finding; and (3) the trial court's refusal to allow the admission of evidence in his defense. We need not address Thompson's first two points on appeal, because we find merit in his third. We hold that Thompson's due-process rights were violated when he was denied the opportunity to present evidence at the adjudication hearing, and we reverse and remand for the taking of additional evidence.

I. *The Facts*



Thompson and Jeannette Stepanian[1] are the parents of twins, A.T. and S.T. Stepanian is also the mother of ten-year-old C.S.[2] Thompson and Stepanian have a history of domestic disturbances within their relationship, which have involved both law enforcement and the Department of Human Services. After an incident of domestic disturbance wherein Stepanian jumped out of a moving vehicle driven by Thompson, she sought and received an order of protection. The order of protection excluded Thompson from her residence and prohibited his contact with A.T. and S.T. Approximately two weeks after receiving the order of protection, Stepanian resumed her relationship with Thompson and allowed him to return to the residence. After DHS was notified of this violation of the protective order, it instituted a protection plan with Stepanian designed to prevent removal of the children from the home. One of the terms of the plan was that Thompson would have absolutely no contact with Stepanian or the children. Two weeks later, the police were advised that Thompson had again violated the order of protection by meeting with Stepanian. It was this violation that resulted in the Department exercising a 72-hour hold on the children on March 28, 2014.

## II. *The Hearing*

An adjudication hearing was held on June 2, 2014. The parties at the hearing were: the Department, Thompson, Stepanian, and the father of C.S. Each party was represented by counsel, and the children were represented by an attorney ad litem. The Department called five witnesses, including Stepanian and Thompson. After the Department rested, the court

---

[1]The mother filed a notice of appeal, then abandoned her claim. As a result, she is not a party to this appeal.

[2]C.S. is not the biological child of Thompson; therefore, her removal is not an issue on appeal.


turned to the father of C.S. to present his case. Counsel for C.S.'s father stated that he had no witnesses to present and renewed his previous motions. Stepanian's counsel then indicated to the court that she had no witnesses to present either. At that point, the ad litem informed the court that she had no testimony to present, but that she did have some argument. The court then invited the ad litem to continue with her arguments by stating, "Please." The ad litem then presented her argument, followed by the Department's and the mother's response thereto. The court then, for the first time, turned to Thompson's counsel for input. Thompson's attorney informed the court that additional witness testimony was necessary. Thompson's counsel informed the court that he wished to recall Thompson and Stepanian to rebut testimony presented in the Department's case-in-chief, as well as three character witnesses. The trial court questioned why counsel had waited until after the matter had been placed under consideration to present his case. Counsel indicated that he had not called his witnesses earlier because he believed that the previous arguments were in the nature of directed-verdict motions. The court found otherwise and would not allow counsel to call any witnesses. At that point, Thompson's counsel proceeded with his argument as to why adjudication was not warranted.

### III. *The Analysis*

Thompson argues in his third point on appeal that he was improperly denied the opportunity to present evidence at the adjudication hearing to controvert a dependency-neglect finding. We agree. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *See Peterson v. Judges of Jefferson*

*Cnty. Circuit Court*, 2014 Ark. 228 (per curiam); *see also Ark. Dep't of Corr. v. Bailey*, 368 Ark. 518, 247 S.W.3d 851 (2007) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Here, the record reveals that counsel attempted to call his witnesses at the first opportunity provided to him by the trial court. Rather than allowing him to put on a defense, the trial court expressed its exasperation with counsel for waiting until arguments had begun to inform it of his intent to call witnesses. The trial court's refusal to allow Thompson to call witnesses on his behalf denied Thompson an opportunity to be heard in a meaningful manner. We stress that, in this case, the trial court was in complete control of the presentation of the evidence, and it did not seek the input of Thompson's counsel until after inviting argument of the other parties. By failing to allow Thompson to present his witnesses, the trial court denied Thompson's fundamental right to due process. Therefore, we reverse the adjudication and remand to allow Thompson to present additional evidence on his behalf.

The Department contends that this issue was not preserved for review because Thompson did not make a due-process argument to the trial court. We disagree. While we are mindful from our review of the record that Thompson's counsel never uttered the phrase "due process," he clearly asserted his intent to present a defense to the adjudication and did so at the first available opportunity provided to him by the court. The trial court, however, denied him the opportunity to be heard.

The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests. *Troxel v. Granville*, 530 U.S. 57 (2000). The Due Process Clause of the Fourteenth Amendment is the barrier that protects a parent's

4

fundamental right to make decisions concerning the care, custody, and control of their children from the actions of the State. *Id.* at 66–67; *see also Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002). Few consequences of judicial action are so grave as the severance of natural family ties. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982) (Rehnquist, J., dissenting)). Accordingly, in matters involving the removal of children, our supreme court has extended many of the same Fourteenth Amendment due-process safeguards to proceedings involving the termination of parental rights as have been found to be constitutionally mandated in criminal trials. *See K.C. v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 353, 374 S.W.3d 884; *see also Clemmerson v. Ark. Dep't of Human Servs.*, 102 Ark. App. 1, 4, 279 S.W.3d 484, 487 (2008) (citing *Jones v. Ark. Dep't of Human Servs.*, 361 Ark. 164, 205 S.W.3d 778 (2005)). We are mindful that many of these citations arise from actions to terminate parental rights. However, we hold that these due-process protections are no less important at the adjudication stage. Given the magnitude of the issues at play here, Thompson's patent attempt to present a defense, and the nature of the trial court's dismissive response thereto, we hold that, under these particular circumstances, it would be exalting form over substance to find that Thompson's due-process argument was not preserved.

Because we have determined that the case should be remanded for further evidentiary consideration, we need not decide whether the evidence was sufficient to support the adjudication. As to Thompson's argument on the constitutionality of the removal statutes, it is our duty to refrain from addressing constitutional issues where, as here, the case can be

disposed of without determining the constitutional questions. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858; *Daniel v. Spivey*, 2012 Ark. 39, 386 S.W.3d 424; *Solis v. State*, 371 Ark. 590, 269 S.W.3d 352 (2007) (holding that, if the case can be resolved without reaching constitutional arguments, it is our duty to do so); *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996) (holding that constitutional issues are not decided unless it is necessary to the decision). Otherwise, any opinion offered by this court would be purely advisory, and it is well settled that this court does not issue advisory opinions. *See Entergy Ark., Inc. v. Ark. Pub. Serv. Comm'n*, 2011 Ark. App. 453, 384 S.W.3d 674.

Reversed and remanded.

PITTMAN and GLOVER, JJ., agree.

*Booth Law Firm*, by: *Frank W. Booth*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.