
# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-17-427

|  |  |
|---|---|
| | Opinion Delivered October 18, 2017 |
| AMANDA LESSLEY<br>APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04JV-15-718] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE THOMAS SMITH, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Amanda Lessley appeals the termination of her parental rights to her children. Lessley argues that the circuit court erred in (1) granting a Rule 60 motion for reconsideration filed by the Department of Human Services (DHS) after the termination order was entered, (2) refusing to allow Lessley to elicit evidence regarding the applicability of the Indian Child Welfare Act (the ICWA), and (3) finding that termination was in the children's best interest because there was insufficient evidence of adoptability. We affirm.

On 16 November 2015, DHS petitioned for emergency custody of seven-year-old S.H., five-year-old H.A., and four-year-old R.A. The accompanying affidavit stated that the children's mother, Lessley, had been arrested for delivery of methamphetamine earlier that week and had left the children in the care of her roommate, who took the children to the Siloam Springs Police Department when she could no longer care for them. The affidavit noted the family's history with DHS dating back to 2012, including a true finding

of environmental neglect in November 2012 and a protective-services case that had been open from December 2012 to June 2014.

The court granted emergency custody of the children to DHS that same day and the next day found probable cause to continue custody with DHS. The probable-cause order noted that the ICWA applied and identified a Cherokee tribal affiliation. On 30 November 2015, DHS received a letter from the Cherokee Nation; the letter informed DHS that the information it had received regarding the mother and the children was incomplete and that it was "impossible to validate or invalidate this claim without more complete information." The Cherokee Nation requested Lessley's middle name, maiden name, and date of birth.

The court adjudicated the children dependent-neglected due to neglect and parental unfitness on 12 January 2016. The adjudication order included a finding that the ICWA did not apply to the children in this case. The order also noted that Lessley had not been present for the hearing and had failed to attend the staffing.

Another letter from the Cherokee Nation dated 7 January 2016 stated that none of the names provided, which consisted of the children's names, Lessley's name, and the two putative fathers' names, were current enrolled members of the tribe. The letter concluded that the children did not meet the definition of an "Indian child" in relation to the Cherokee Nation as stated in the ICWA, so the Cherokee Nation did not have legal standing to intervene. Lessley's date of birth had still not been provided, however, and the letter explained that

> [b]ecause 'ENROLLED TRIBAL MEMBER' and 'ELIGIBLE FOR ENROLLMENT' are different, a conclusive finding of 'eligible for enrollment' requires the full names, to include maiden names, and dates of birth for the direct biological lineage linking the child to an enrolled member

2

of the tribe. It is impossible for Cherokee Nation to confirm or deny a claim of 'eligible for enrollment' without this information.

Review orders entered in February and April 2016 noted that Lessley was not in compliance with the case plan and court orders. The permanency-planning order, entered in July 2016, again noted that Lessley was not in compliance and changed the goal of the case to adoption. DHS petitioned to terminate parental rights in November 2016, citing the "failure to remedy," "subsequent factors," and "aggravated circumstances" grounds for termination.

The court convened the termination hearing on 31 January 2017. Lessley testified that she was currently incarcerated in the Benton County jail for failure to appear and that she was on probation after pleading no contest to delivery of methamphetamine. She admitted that she had spent "quite a bit" of time in jail during the pendency of the case, maybe six or nine months in total. She explained that she did not currently have a home, a car, or a driver's license, but upon her release from jail, she could live with her "adoptive granny." She also stated that she had not worked since 2015, and she admitted that she had not completed counseling or parenting classes. She denied she had a substance-abuse problem, but she also acknowledged testing positive for methamphetamine more than once throughout the case, with the last positive test occurring less than thirty days previously.

On cross-examination, Lessley testified that she "should be" a registered member of the Cherokee tribe because "that's what [her] father told [her] before he passed away." She said that she did not have a registration card but that her dad and stepmom were "dealing with that" and would send it to her. After Lessley's testimony, DHS clarified that it had given notice to the Cherokee Nation, but because Lessley had not been available to provide

sufficient information, the Cherokee Nation had been unable to make any determination. DHS also noted that the court had made a finding at the adjudication that the ICWA did not apply.

Maria Taylor, the DHS caseworker, testified that Lessley had been noncompliant throughout the case and had not remedied the cause of the children's removal. She explained that S.H. had repeated the second grade but was currently doing well and that R.A. had struggled with some aggressive behavior but was also currently doing well. She said that all the children were in therapy and that S.H. and R.A. currently needed continuing services; however, she agreed that it was "reasonably likely" that the three children would be adopted and that there was a "strong likelihood" that the children would be adopted together. Taylor testified that DHS had identified a family interested in adopting the children.

On cross-examination, Taylor explained that she was not involved in providing information to the Cherokee Nation but that she did know Lessley's date of birth. Parent counsel then asked if Taylor knew Lessley's Social Security number, but the children's ad litem objected and argued that "the Court has already made a finding that this is not an ICWA case, at the adjudication hearing. And that was not appealed." Parent counsel responded that the Cherokee Nation had asked for more information, specifically Lessley's date of birth, but that DHS had not provided that information so that an actual determination of the children's eligibility could be made. The ad litem insisted that the proper procedure would have been to appeal the adjudication order, and the circuit court agreed. The court also found that the line of questioning was not relevant, that the issue

had not been raised since the adjudication hearing, and that this was a "last-minute-ditch argument that there's been no notice to the Tribe." Finally, Taylor confirmed that the children were in a preadoptive home, and that home was interested in adopting the children.

During closing arguments, parent counsel continued to argue that the ICWA notice was inadequate and that the finding made in the adjudication order was not determinative of the issue. DHS countered that it had provided the information that it had at the time, and that the Cherokee Nation was not able to say that the children were Indian children, so the court made its ruling. The ad litem also argued that the Cherokee Nation's initial response seeking more information was also sent to parent counsel, so he had a responsibility to provide that information as well and failed to do so.

The court found that DHS had given timely notice to the Cherokee Nation and also found:

> The Cherokee Nation sent their response back asking all parties for more information. That testimony, and that information could only come from the mother. In this case, it was not provided, nor was there any mention that the ICWA case—that this may be an ICWA case was even an issue after the adjudication finding of—or January 12 of 2016, over a year ago.
>
> While I find this argument now being raised at the last minute is good lawyering, but I don't find it's appropriate, nor do I find it meets these circumstances.

Parent counsel again argued that the finding in the adjudication order was not final and appealable, to which the court responded, "Even with that ruling, I still find by this evidence today, notice was made, no more evidence was provided by the mother since that ruling. So even if we get past whether or not that's an appealable issue, the evidence shows today that it's not an ICWA case."

The court entered a termination order on 8 March 2017. In the order, the court found that the ICWA did not apply to the children in this case and that DHS properly notified the Cherokee Nation prior to the adjudication. The court also found that Taylor had testified that an adoption would be reasonably likely if the termination petition was granted and that Taylor was a credible witness. Lessley filed her notice of appeal two days later.

On March 30, DHS filed a "motion to reconsider order" pursuant to Ark. R. Civ. P. 60. DHS asked the court to reopen the evidence in the termination proceeding to "consider newly acquired evidence from the Cherokee Nation." Attached to the motion was a letter from the Cherokee Nation, dated 14 March 2017, which included Lessley's date of birth and found that the children were not Indian children as defined by ICWA. Parent counsel objected to the motion, arguing that Rule 60 did not authorize the submission of new evidence or the reopening of the record.

The court held a hearing on the motion on April 11. DHS explained that after the termination hearing, it had "contacted the Tribe and got a letter from them indicating that the—with the additional information, they were able to determine the children were not Indian." Thus, DHS requested that the court reopen the evidence under Rule 59 or Rule 60 to resolve the ICWA issue. Parent counsel argued that the relief requested by DHS was not available under Rule 59 or Rule 60 and that DHS was trying to "correct something that the Department wishes it had done at the time of trial, and that's simply not the remedy for it." The court allowed the record to be supplemented, explaining, "I do find an issue that we know is resolved, which was the only issue raised on appeal that had merit, is not

fair to the children . . . nor is it in their best interests, nor is it fair to the Court above to not have an answer that we know the answer." The court also found that the Cherokee Nation had concluded that the children were not Indian children. In making its ruling, the court stated, "I think it's important enough that I will use my inherent authority, I'll use Rule 59, I would use Rule 60 if I thought it fit, but I find that this answer needs to be resolved since we had the answer." The court agreed to give parent counsel time to review the new letter and offer evidence in response before entering an order.

The court entered its written order on May 1 and made the following findings:

3.     Pursuant to A.R.C.P. 60 and the Court's inherent power to protect the integrity of the proceedings and safeguard the rights of the litigants, hereby re-opens the evidence in the termination of parental rights hearing to accept the response of the Cherokee Nation regarding the juveniles' status under the Indian Child Welfare Act.

4.     The Court finds the children are not Indian Children as contemplated by the Act.

5.     The mother was given an opportunity to respond to the evidence but has declined.

Lessley then amended her notice of appeal to include this order.

Parental rights may be terminated if clear and convincing evidence shows (1) that it is in the child's best interest and (2) that statutory grounds have been proved. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing

court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.*

## I. *Motion to Reconsider*

Lessley's first point on appeal is that the circuit court erred in reopening this case pursuant to Rule 60 "for the sole purpose of accepting subsequently-obtained evidence that the Department wished to introduce to bolster its position that ICWA did not apply to these children." It is within the discretion of the circuit court to determine whether it has jurisdiction under Rule 60 to set aside a judgment, and the question on appeal becomes whether there has been an abuse of that discretion. *Watson v. Connors*, 372 Ark. 56, 270 S.W.3d 826 (2008). In an appellate court's review of a circuit court's order to determine whether there has been an abuse of discretion, the court will not substitute its own decision for that of the circuit court but will merely review the case to see whether the decision was within the latitude of decisions which a judge or court could make in a case. *Scales v. Vaden*, 2010 Ark. App. 418, 376 S.W.3d 471.

Arkansas Rule of Civil Procedure 60 provides:

(a) Ninety-Day Limitation. To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk.

(b) Exception; Clerical Errors. Notwithstanding subdivision (a) of this rule, the court may at any time, with prior notice to all parties, correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the

appellate court and thereafter while the appeal is pending may be so corrected
with leave of the appellate court.

Ark. R. Civ. P. 60 (2016). Lessley argues that under the plain language of the rule, the relief sought by DHS and granted by the circuit court was not contemplated by the rule. DHS was not seeking to modify or vacate the judgment to correct a mistake or prevent the miscarriage of justice; the court had already ruled in DHS's favor and found that ICWA did not apply. Thus, the reopening of evidence and admittance of the letter did nothing but bolster DHS's position that the ICWA did not apply. This action was not warranted under Rule 60, Rule 59, or any other rule of civil procedure.

In response, the ad litem concedes that DHS's motion was not a proper Rule 60 motion but nevertheless argues that reversal is not warranted because Lessley was not prejudiced by the circuit court's grant of the motion. The termination order had already found that ICWA did not apply, and that order did not change. DHS agrees that Lessley has shown no prejudice from the circuit court's granting of the motion.

We hold that the circuit court erred in relying on Rule 60 to reopen the record and admit additional evidence; however, we also hold that Lessley has shown no prejudice from the circuit court's grant of the motion and admission of the March 14 letter. The court's ultimate ruling that ICWA did not apply did not change. Even in instances in which the circuit court erred in admitting evidence, the appellate court will not reverse absent a showing of prejudice. *Clary v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 338.

## II. *Applicability of the ICWA*

For her next point on appeal, Lessley argues that the circuit court erred in not allowing her to question Taylor about the documentation provided to the Cherokee

Nation. She also asserts that the circuit court erred in finding in the termination order that DHS had properly notified the Cherokee Nation prior to the adjudication "without giving [Lessley] a chance to rebut the Department's contention that it complied with the Act and that the Act did not apply." Lessley likens this case to *Thompson v. Arkansas Department of Human Services*, 2014 Ark. App. 724, 452 S.W.3d 123, in which this court reversed the circuit court's refusal to allow parent counsel to call any witnesses at the adjudication hearing: "The trial court's refusal to allow Thompson to call witnesses on his behalf denied Thompson an opportunity to be heard in a meaningful manner. . . . By failing to allow Thompson to present his witnesses, the trial court denied Thompson's fundamental right to due process." *Id*. at 4, 452 S.W.3d at 125. Likewise, Lessley contends, she was denied an opportunity to be heard on the issue of whether DHS sent the necessary information to the Cherokee Nation so a proper determination under the ICWA could be made.

In response, the ad litem argues that the circuit court did not err because any evidence concerning the notice given to the Cherokee Nation was irrelevant given the circuit court's earlier, unappealed finding made at the adjudication hearing that the ICWA did not apply. The ad litem also contends that Lessley did not object at the termination hearing to the admission of the letters received from the Cherokee Nation, so she cannot argue error now. DHS asserts that contrary to Lessley's argument that she was not given a chance to rebut the evidence, the circuit court gave parent counsel time to submit evidence in response to DHS's motion, and none was submitted. DHS argues that Lessley was given notice and an opportunity to be heard, and her reliance on *Thompson* is misplaced.

We first note that the scope and extent of cross-examination lies within the circuit court's discretion, and we will not reverse the decision to limit cross-examination absent a clear abuse of that discretion. *Hagar v. Shull*, 2017 Ark. App. 185, 518 S.W.3d 683. In this case, we hold no abuse of discretion occurred; while the circuit court did limit counsel's cross-examination of Taylor at the termination hearing, the court entertained counsel's arguments about the notice given to the Cherokee Nation and heard Lessley's testimony regarding her alleged tribal affiliation. And at the hearing, Lessley failed to make any proffer of what testimony she wished to elicit from Taylor.

Furthermore, from the adjudication of dependency-neglect to the termination hearing, a time span of over one year, Lessley could have moved to admit evidence of her tribal affiliation or any other evidence she felt was relevant, but she did not. The record does not demonstrate that ICWA was even mentioned during that period. And finally, Lessley was again given the opportunity to submit any evidence in support of her claim prior to the court's granting of the Rule 60 motion, and she failed to do so. Given this record, we hold that Lessley was not denied the opportunity to present evidence regarding the notice given to the Cherokee Nation.

## III. *Adoptability*

In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Adoptability is not an essential element but is rather a factor

that the circuit court must consider. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1.

For her third point, Lessley argues that DHS presented insufficient evidence of adoptability. She acknowledges Taylor's testimony that the children were "reasonably likely" to be adopted and that DHS had identified a family willing to adopt them. But, she asserts, Taylor's testimony contradicts her court report filed prior to the termination hearing and the CASA court report filed approximately six weeks before the termination hearing, which states that the children are in foster care in a group home. Lessley argues that it is not clear whether Taylor was simply mistaken about the children's placement or whether she purposely misled the court, but "[e]ither way, it is clear that her testimony on the issue of their adoptability was not credible." Thus, she asserts, the circuit court's best-interest finding must be reversed.

In response, the ad litem asserts that Lessley failed to challenge Taylor's testimony below or to impeach her testimony with the allegedly contradictory court report. The ad litem argues that it was the circuit court's prerogative to believe Taylor, and this court defers to the circuit court's credibility determinations. DHS echoes this argument and contends that any discrepancies in Taylor's testimony should have been addressed through cross-examination.

We agree that any discrepancy in Taylor's testimony should have been addressed through cross-examination at the termination hearing, and Lessley's failure to challenge Taylor's testimony below precludes her argument on appeal. It is well settled that arguments made for the first time on appeal will not be considered. *Philpott v. Ark. Dep't of Human*

*Servs.*, 2011 Ark. App. 572.  Taylor testified that the children were adoptable, and the case law is clear that a caseworker's testimony is sufficient to support an adoptability finding. *Barnes v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 618, 508 S.W.3d 917.

Affirmed.

GLADWIN and KLAPPENBACH, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.